No. 43.—The Mayor and Council of Macon, plaintiffs in error, *vs.* The Macon & Western R. R. Co. defendant.

[1.] In the construction of Statutes made in favor of corporations or particular persons, and in derogation of common right, care should be taken not to extend them beyond their express words or their clear import.

[2.] Where a Rail Road Company had, by their charter, the *exclusive* right to transport and carry persons, produce, merchandize, and all other things over their road from Atlanta to Macon: *Held,* that their charter did not confer on the company *the right* to engage in the business of transporting produce through the City of Macon, across the Ocmulgee bridge, from their rail road depot to another rail road depot, for the accommodation of their customers.

[3.] The Act of 1828, which provided that wagons and carriages loaded with corn and cotton, should pass the Ocmulgee bridge free of toll, is repealed. *pro tanto,* by the Act of 1847, which vested in the corporate authorities of the City of Macon the right to regulate the tolls of said bridge, the latter Act repealing all laws or parts of laws which would militate against its provisions.

Motion to dissolve injunction, in Bibb Superior Court.   Decided by Judge Floyd, in Chambers, 8th March, 1849.

By the provisions of an Act of the General Assembly, passed 20th December, 1828, a sale was authorized of the bridge across the Ocmulgee River at Macon, the property of the State, to the Town of Macon, for the sum of $25,000, payable in instalments. By the 7th section of the Act, it was provided, that after the

---

*See *Ezzell vs. Maltbie & Winn,* 6 *Ga. Rep.* 495.—[Rep.]

sale, the corporation " shall not be permitted to collect toll for any wagon or other carriage loaded with *cotton* or *corn*, under the penalty" of forfeiting to the State for every such offence the sum of $30.

By an Act passed December 27, 1847, authority was granted the Mayor and Council of the City of Macon, " to pass *all rules and ordinances* necessary for the protection and preservation of the bridge across the Ocmulgee River at Macon, and shall *regulate the tolls of the same.*" To this Statute was a clause repealing all Acts inconsistent with its provisions.

On the 20th day of February, 1849, an absolute and unconditional grant issued to the City of Macon to the bridge and its abutments.

On the 12th February, 1849, it was ordained by the City Council of Macon, " that any licensed dray, crossing the Macon Bridge with a load, or part of a load, from either rail road depot, to deliver to wagons or to a rail road depot, or with cotton or other loading from wagons, to deliver to a rail road depot, should pay a specified toll.

The Macon & Western Rail Road Company, an incorporation " for the purpose of constructing and keeping up a rail road communication from the City of Macon," to the Town of Atlanta, filed a bill against the City Council of Macon, alleging that the complainants were engaged in the transportation of cotton and other commodities from Atlanta and other places to Macon, and for the accommodation· of their customers desirous of sending corn and cotton forward to the City of Savannah, the complainants *caused* the same to be carried across the Ocmulgee River on the bridge now owned by the City of Macon. The bill farther alleged, that the ordinance beforementioned was illegal and void, and that under it the defendants were collecting tolls from complainants illegally, amounting to ten dollars per day. The bill prayed an injunction and an account of the amount already collected.

The injunction being granted, the Council, by their answer, denied the right of the Macon & Western Rail Road Company to engage in the business of draying, under its charter. The answer denied that the prohibition in the Act of 1828, applied to cotton and corn transported from one portion of the City to the other, but was intended solely for the benefit of planters trading

in the City. If it did apply to such, the answer contended, that the State alone could take steps to recover the forfeiture provided, and the complainant had no right to proceed in this matter. The answer farther contended, that the Act of 1847 repealed, *pro tanto*, the Act of 1828.

On the coming in of the answer, the counsel for defendants below moved to dissolve the injunction on several grounds, which may properly be considered under two.

1st. That the Macon & Western Rail Road Company have not, under their charter, the privilege of draying through Macon and across the Ocmulgee River.

2d. That the Council of the City of Macon have the right to pass the ordinance complained of, and if they have not, the State alone can institute proceedings to recover the forfeiture provided by the Act of 1828.

The Court refused to dissolve the injunction, and defendants excepted.

J. J. Gresham and A. P. Powers, for plaintiffs in error, relied on the following authorities in support of the several exceptions—

5 *Kelly & Cobb*, 567. 4 *Wheaton*, 518. 4 *Peters*, 152. *Angell & Ames*, 66. 12 *Gill & Johnson*, 399. *U. S. Supplemental Dig.* vol. 2, 19. 5 *Pike*, 595. 1 *Overton*, 370. *United States Digest*, vol. 2, 472. 12 *Pickering*, 184. *N. & M. vol.* 2, 400.

W. Poe and Gregory, for defendant, contended—

That the prohibition contained in the 7th section of the Act of 1828, bears no resemblance to a reservation contained in a grant. *Shep. Touch.* 80. 29 *E. C. L.* 199.

The 7th section of the Act of 1828, is a prohibitory Statute, and every act done against it is not only illegal but absolutely void.

And if there were no prohibitory words, yet as there is a penalty annexed, it is a well settled rule that a penalty implies a prohibition. 14 *John. Rep.* 289, 290, *Hallett vs. Novion.*

Now, it cannot be questioned that the ordinance of the City complained of, is in direct violation of the provisions of the said 7th section, and it being so, makes said ordinance absolutely

void, and the bill of defendants in error only sought the aid of a Court of Equity to restrain said plaintiffs in error from demanding toll under a void ordinance.

But the plaintiffs in error contend, in the 5th assignment of error, that "the grant having issued under the great seal of the State to the Mayor and City Council, without any reservation or condition, conveys to them an absolute title, in fee, which cannot be infringed until the grant itself is set aside and annulled for cause, &c.

The only answer we have to make to this ground is, the Statute by virtue of which the sale was made and the grant issued, and which is specially referred to in the grant as containing the authority by which the grant was issued.

We reply to the first ground of exception, that the defendant in error is not, nor was engaged in the draying business, but procured the cotton to be conveyed in the drays of others, and no such admission is contained in defendant's bill, nor no such allegation in plaintiffs in error's answer; but contends that she has a right to convey, in her own drays, the cotton brought to market on her road.

*By the Court.*—WARNER, J. delivering the opinion.

The first question made by the record, is as to the *right* of the Macon & Western Rail Road Company, under their *charter*, to engage in the transportation of corn and cotton *through the City of Macon, and across the Ocmulgee River on the bridge, by drays or other conveyance.*

[1.] A corporation is an artificial being, invisible, intangible and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created. *Dartmouth College vs. Woodward,* (6 *Cond. Rep. U. S.* 543.) In *Doe ex dem. Carr vs. The Georgia Rail Road and Banking Company,* (1 *Kelly,* 533,) this Court held, that in the construction of Statutes, made in favor of corporations or particular persons, and in derogation of common right, care should be taken not to extend them beyond their *express words* or their *clear import.* The defendant in error

alleges that the ordinance of the City of Macon of the 12th February, 1849, which imposed toll on any *licensed dray* crossing the Macon bridge, with a load or part of a load from either rail road depot, to deliver to wagons or to a rail road depot, or with cotton or other loading from *wagons* to deliver to a rail road depot, is illegal and void, and that the plaintiffs in error were collecting tolls from him illegally under that ordinance. It is said, the complainant below does not allege he is engaged in the *business of draying* corn and cotton across the bridge, but that he *causes* the same to be carried across the Ocmulgee River on the bridge, for the accommodation of his customers. The ordinance, it will be perceived, only levies toll on *licensed drays* crossing the bridge with cotton and other loading, and the question very naturally arises, that if the complainant is not, either by himself or agents, engaged in the business of transporting cotton and other loading across the bridge at Macon, with *licensed drays*, how his rights are affected by the ordinance of 1849, which expressly imposes the toll on *such vehicles* and *none other ?*

The complainant alleges, that the defendants are collecting toll from him under the ordinance of 1849, *illegally*, for the corn and cotton which he *causes* to be transported across the bridge for the benefit of his customers. Taking into view *the ordinance*, and that the complaint is that tolls are exacted from the complainant *under it*, for *causing* corn and cotton to be transported across the bridge, the conclusion is irresistible to our minds, that the complainant *causes* the corn and cotton to be carried across the bridge on *licensed drays*, a business which is not authorized by the charter, either expressly or as necessarily incidental thereto.

[2.] The company have, by their charter, the *exclusive* right of transportation and conveyance of persons, produce, merchandize and all other things over their rail road, from Atlanta to Macon ; but the charter is *silent* as to the right of conveying either persons or produce through the City of Macon, and across the bridge, for the accommodation of their customers or any body else, with licensed drays or any other conveyance.

The ordinance of 12th February, 1849, is, in our judgment, a valid ordinance, and the corporate authorities of the City of Macon had the power and authority to enact it.

[3.] By the 7th section of the Act of 1828, which authorized the sale of the bridge at Macon to the corporation, the corpora-

tion was prohibited from collecting toll for any wagon or other carriage loaded with corn or cotton, under the penalty of being divested of all right and title to the bridge, and the same was to revert to the State. *Dawson's Compilation*, 397. The tolls of the bridge were, at that time, regulated by the Legislature. By the 29th section of the Act of 1847, to alter and amend the several Acts incorporating the City of Macon, it is enacted, "That the Mayor and Council of the City of Macon shall have the power and authority to pass all rules and ordinances necessary for the protection and preservation of the bridge across the Ocmulgee River at Macon, and *shall regulate the tolls of the same.*"

By the 35th section of said Act, it enacted, "That the Acts heretofore incorporating the City of Macon, together with *all laws and parts of laws* militating against this Act, be, and the same are hereby repealed." See *Pamphlet Laws*, 1847, *p.* 43.

Before the enactment of the Act of 1847, the State had controlled the regulation of the tolls of the bridge, but when the corporation had paid the purchase money for it to the State, the sovereign authority thought proper to relinquish this power to the corporation.

When we take into view the legislative history of the City of Macon, the conclusion is irresistible, that the reservation made in favor of carriages loaded with corn and cotton crossing the bridge, by the Act of 1828, was intended to benefit those who came to the City with such produce for sale in *that market*, and not those who carried their produce across the bridge to be sold in other *distant markets*. The present state of things, as connected with the transportation of produce by the rail roads, we do not suppose was ever contemplated by the Legislature, and this marked change in the affairs and business of the City, affords a very cogent reason why the Legislature should have relinquished all control over the tolls of the bridge to the corporation. The Act of 1828, as we have seen, prohibited the corporation from charging toll on any wagon or carriage loaded with cotton or corn. The Act of 1847, expressly gives the power and authority to the City authorities to *regulate the tolls of the bridge*, and as expressly repeals all laws or parts of laws which militate against the power and authority of the corporation to regulate such tolls. The City authorities have regulated the tolls across the bridge by the enactment of the ordinance complained of, and if the law of 1828, or

any part of that law, militates against their right to make such regulations, the answer is, that so much of the Act of 1828 as does so militate against such right of the corporation, is *repealed* by the Act of 1847.   The ordinance of 1849 is a general ordinance, and applies to any licensed dray crossing the Macon bridge, with a load from a rail road depot to deliver to wagons or to a rail road depot, as well as to drays with loading from *wagons* to deliver to a rail road depot.   The equitable right of the complainants or others to use the bridge of the defendants, who are necessarily compelled to keep the same in good order and condition, at their own expense, for the purpose of transporting produce through the City, to *distant markets*, without making compensation therefor, is not, in any view that we have been able to take of the question, at all apparent to our minds. Admitting the Act of 1828 was not repealed, which authorized corn and cotton to pass the bridge free of toll, and that the complainants come within the *letter* of that Act; yet, we all know they do not come within the true *intent* and meaning of that Statute, when it was enacted.

Let the judgment of the Court below be reversed.