THE CITY COUNCIL OF AUGUSTA *vs*. THE PORT ROYAL AND AUGUSTA RAILWAY.

1. A charter which authorized a railroad company to run its road from the boundary between the states of South Carolina and Georgia to the city of Augusta, and, with the assent of the railroads in this state, to join its track to theirs, did not confer upon it the power to subsequently run its road through the city of Augusta, so as to connect with another railroad. In order to do this, express authority must be granted by the legislature.

2. The act of 1881 (Code §1689 (j) ), which allows railroads to connect with each other, does not confer express authority on a railroad company to run its road through an incorporated city.

(a) Where an act was entitled "An act to provide a general law for the incorporation of railroads, and to regulate the same," its object was single, being to provide a general law for the incorpora-

* Ante, p. 220.

The City Council of Augusta *vs.* The Port Royal and Augusta Railway.

tion of railroads, and the words, "and to regulate the same," mean only to regulate the railroads incorporated under the act. Therefore, where it is provided in the body of the act that its provisions shall apply to railroads already incorporated, to that extent it embraces more than one subject-matter, and one not indicated by the title.

3. Where the charter of the Augusta and Knoxville Railroad Company authorized it to build a railroad from Augusta, in the county of Richmond, to Clayton, in Rabun county, and to consolidate or connect with any other railroad company in or out of the state, the intention of the act was to give this company the power to connect with those railroads with which its road might come in contact along the line of its route, but not within the city of Augusta, which is mentioned as the initial point of the line of the road.

4. The act of 1874 (Code, (§§719 (r), 719 (t) ), which gives the rights to railroads to join each other by proper switches, and provides for enforcing the right, if one of the roads should refuse it, makes no provision for taking or condemning the property of any other person than the railroad refusing the connection, and does not confer power on the railroad to run through an incorporated city for the purpose of reaching and joining another railroad.

5. The act of 1856, which permits the city council of Augusta to authorize the connection by common depots, tracks, or otherwise, of all railroads in the city, or of any of them, upon such terms and conditions as may be fixed and agreed on between the city council and them, conferred a discretionary power upon the municipal authorities, but did not compel them to allow such connections.

(a.) An expenditure of money after agreement made with the municipal authorities might estop them from interfering with the work; but a mere unauthorized expenditure would not have such an effect.

March 10, 1885.

Railroads. Municipal Corporations. Eminent Domain, Charters. Laws. Constitutional Law. Estoppel. Before Judge RONEY. Richmond Superior Court. October Term, 1884

Reported in the decision.

J. S. & W. T. DAVIDSON; FRANK H. MILLER; GEO T BARNES, for plaintiff in error.

GANAHL & WRIGHT; JOS. B. CUMMING, for defendant.

BLANDFORD, Justice.

The Port Royal and Augusta Railway Company and this company, as lessees of the Augusta and Knoxville Railroad, were proceeding to lay down tracks in the city of Augusta to connect these two roads, when they were stopped and prevented from so doing by the municipal authorities of the city of Augusta. The defendants in error then filed this bill to enjoin these authorities from interfering with them in constructing their connecting lines through the city. The chancellor granted the injunction prayed for, and the city of Augusta excepted to this decree of the chancellor, and error is assigned thereon.

Whether this decree be right or not depends upon the law. The defendants in error insist that the injunction was properly granted: (1.) Because the charter of the Port Royal and Augusta Railway Company authorized it to pass over lands in the city of Augusta. (2.) Because the charter of the Augusta and Knoxville Railroad authorized the connection. (3.) Because the act of 1874, Code, section 719 (r), also authorized the connection. (4.) The amended charter of the Port Royal and Augusta Railway Company, under the act of 1881, Code, section 1689(j), gave this right. (5.) That they were also authorized, under the act of 1856, p. 249, and the ordinance of the city of Augusta of the 13th of April, 1874, passed in pursuance of said act of 1856, to make the connection as they proposed. These positions are denied and contested by the plaintiff in error. Hence it is necessary that these several acts and ordinance be examined and considered.

1, 2. By the charter of the Port Royal and Augusta Railway, under the act of 1859, it was authorized to build its road from the boundary of the two states (South Carolina and Georgia) to the city of Augusta, and it was authorized, by the assent of the railroads of Georgia, to join

its track to their railroad tracks. This road reached Augusta in 1873, and built its depot and other buildings on the east side of Augusta; no attempt by it has been made to connect with any other railroad in this state until shortly before the filing of this bill; it was content to remain in the position it occupied in 1873.

The case of *Macon vs. Macon and Western Railroad Company* is in point and decides this aspect of the case. 7 *Ga.*, 221. There is no right or power granted by the charter which will authorize this company to run its road through the city of Augusta. Before it can do this, express authority must be granted by the legislature.

But it is contended that the charter of this road has been amended by the act of 1881; Code, section 1689(j). We do not think that that act, if constitutional, applies to a case like the present one; it nowhere allows a railroad company expressly to run its road through an incorporated city. Even if it did, we hold that this act, in so far as it embraces matters different from its title and contains more than one subject-matter, is unconstitutional, null and void, as to this section, under the constitution of this state.

The title of this act is "An act to provide a general law for the incorporation of railroads and to regulate the same." The object of the act is single, to provide a general law for the incorporation of railroads, and the words, "and to regulate the same," as contained in the title, can mean nothing but to regulate the railroads incorporated under the act. So we are clear that, when the body of the act, as in the section referred to, applies to the provisions of this act, to railroads already incorporated, it embraces more than one subject-matter, and that this is not indicated by the title of the act. So we think that this section of the act falls within the provisions of par. 8, sec. 7 of the constitution of this state, and is obnoxious thereto. Code, sec. 5067. Par. 2, section 4, article 1 of the constitution declares that legislative acts in violation of this constitution are void, and the judiciary shall so declare

them.   Code, sec. 5028.   The conclusion on this point is, that neither the original nor amended charter of this railroad company authorizes it to run through the city of Augusta.

3. The next subject of inquiry is, does the charter of the Augusta and Knoxville Railroad authorize these roads to connect in the manner in which they proposed to do? The charter of this company authorizes this company to build a railroad from Augusta, in the county of Richmond, to Clayton, in Rabun.   Said company shall have power and authority to consolidate or connect with any other railroad company in or out of this state.   Acts of 1877, p. 298.   It is most manifest that it was the intention of the legislature to give this company the power to connect with those railroads, with which they might come in contact, in and along the line of their route—not within the city of Augusta, which is mentioned in the charter as the initial point, the beginning of the line of road; no other reasonable construction can be put on the act of incorporation of this road. Therefore, nothing else appearing, the power to make the proposed connection between these two roads does not exist from the acts considered

4. Does the power exist under the act of 1874, Code, sec. 719 (r)?   This section declares that when any railroad in this state joins another at any point along its line, or where two of such roads have the same terminus, either line, having the same gauge, may, at its own expense, join its track by proper and safe switches with the others. Section 719 (t) points out the manner of enforcing this right, if one of the roads should refuse to allow the connection, and refers to the charter of the Central Railroad in ascertaining the value of the property taken from the road refusing the connection.   There is no provision in this act for taking the property, or condemning the same, of any other person than the road refusing the connection. This act cannot apply to the case now before us; it only applies to railroad companies and their property, and not

to the property of private persons or other corporations. The defendants in error can get no power to make the union under this last mentioned act.

5. It is contended finally that the act of 1856, p. 249, which permits the city council of Augusta to authorize the connection, by common depots, tracks or otherwise, of all railroads in said city, or any of them, upon such terms and conditions as may be fixed and agreed on between the city council and them, and an ordinance, passed by said city council on the 13th of April, 1874, whereby it was allowed to " any and all railroads, now or hereafter running into the city of Augusta, to connect with any and all railroads in this city by consent of the roads with which they wish to connect, under such restrictions as may be imposed by council, as to the use of the streets through or across which they may pass, the payment of damages, etc.," authorized these roads to make the proposed connection, particularly as said roads had been at great expense and made a great outlay of money for such purpose, while this ordinance was of force. The record shows that much of this expense had been incurred before an application had been made by these companies to the city council to authorize them to make this connection, and some of it for property and the right of way along the proposed route. These companies had full knowledge of the act of 1856 and the terms of the ordinance. This act merely authorized the city council to permit connections, etc., in Augusta. It did not enjoin or command the city to permit the connection, but it was discretionary with the city council to permit or not the connection, and on such terms and restrictions as might be imposed by council, etc. No right to make this connection had been acquired by these companies under the city ordinance before the expenditure of money by them, and the city is not in anywise responsible for or bound thereby. If the terms and conditions upon which these roads should connect had been agreed upon and fixed by the city coun-

cil, and in view of this, these companies had expended money towards carrying out their agreement with the city to make this connection, then it would have been pertinent to inquire as to whether the city was estopped from withdrawing from the arrangement, but no such facts exist in this case; there was nothing done by the city, upon which these companies have acted, which prevents the city from withdrawing their permission or repealing the ordinance granting the same as to such connections.

We have examined and considered all the questions made by this record necessary to determine this case, and our conclusion is that the chancellor erred in granting the injunction in this case.

Judgment reversed.