ALMAND *et al. v.* ATLANTA CONSOLIDATED STREET RAILWAY COMPANY *et al.*

| 108 | 417 |
| 110 | 825 |
| a111 | 684 |
| 108 | 417 |
| 121 | 403 |
| 108 | 417 |
| 129 | 397 |
| 129 | 398 |

1. When a street-railway company has power under its charter to lay its track along the streets of a city, the city authorities may consent to such use of its streets by the street-railway company, although there may be no express power in the charter of the city authorizing it to grant such a privilege.
2. The general rule is that when a municipal corporation is created it becomes vested with jurisdiction over the territory embraced within its corporate limits, and the mere fact that there has been a valuable improvement made by the county authorities on one of the streets of an incorporated city does not oust the municipality of its jurisdiction over such street. The above is true notwithstanding the street improved was, before the incorporation of the city, a part of an established public road of the county.
3. The rulings on the admission of evidence were not erroneous. The evidence rejected, even if admissible, should not have affected the result reached ; and, considering the case as a whole, there was no error in refusing the injunction.

　　　　　Argued May 16, — Decided July 25, 1899.

Petition for injunction. Before Judge Candler. Fulton county. February 23, 1899.

　27

*Hamilton Douglas, D. S. Craig,* and *Culberson & Willingham,* for plaintiffs. ˙ *Goodwin & Hallman, C. L. Pettigrew,* and *J. H. Pitman,* for defendants.

COBB, J. Mrs. Almand and J. B. Hardin brought their petition to the superior court of Fulton county, alleging in substance as follows: Petitioners are residents and taxpayers of Fulton county, and bring this their petition in behalf of themselves and all others in a like position. The County of Fulton has lately graded and straightened a certain public road in the county, commonly known, and which will be hereinafter referred to, as the "chert road." This road runs through and several miles beyond the town of Oakland City in the county, and passes the United States Barracks, and has been for a half century or more, and is now, one of the great public highways of traffic and commerce of the State. From the terminus of Lee street in the City of Atlanta along the chert road to where the line of Oakland City extends is sixteen hundred feet, which space of road is directly under the undisputed supervision and control of the commissioners of roads and revenues of the County of Fulton. The chert road was constructed at very great expense to the citizens of the county and is built of a substance in the nature of cement, which produces a road of inestimable value both as a driveway and for transporting farm and other products in heavily loaded wagons. The road was laid out and constructed many years before Oakland City was incorporated, but it has been paved with chert since the incorporation of the town. The county has never surrendered control over that portion of the chert road in Oakland City, nor did this village contribute in any manner whatsoever to the construction of the road, which was built at an expense, as petitioners are informed, of from eight to ten thousand dollars per mile. On February 4, 1899, the mayor and council of Oakland City made an alleged grant to the Atlanta Consolidated Street Railway Company, of a franchise to lay its tracks and run its cars longitudinally along the chert road from the northern to the southern limits of the town, which alleged grant was made on condition that the railway company should first widen certain portions of the chert road for a space of six

feet on the west side and pave the same in as good a manner as the present road is paved, pavement and graded sidewalks to be put in as good condition as the present sidewalk at the expense of the railway company, and the necessary land to be secured before the company disturbs the road south of Oakland avenue. The railway company was to secure a space of six feet commencing from Oakland avenue in Oakland City and extending to the end of its line at the United States barracks. Between these points Mrs. Abi Mims owns about six feet, and the railway company has not secured or attempted to secure from her this space, which abuts the chert road and is subject to the conditions named above. These were conditions precedent to the commencement of any work by the railway company, and none of them have been performed. The mayor and council of Oakland City have no jurisdiction over the chert road and have no legal right to grant a franchise to the street-railway company, as the authorities of the county have never surrendered control over the road and the charter of the town does not confer upon it authority to exercise control over the road; hence the alleged grant of a franchise to the railway company is ultra vires and void. The county authorities have never granted any franchise to the railway to lay its tracks along such road, but, though they have been appealed to by petitioners to do so, neither they nor the mayor and council of Oakland City have taken any steps to prevent the railway company from laying its tracks along the road. To allow the railway company to disturb the chert road by digging it up will irreparably damage such road, in this: chert when once broken can never be relaid with fresh chert and made to adhere, the new to the old, as when first laid, which fact will necessitate the expenditure of large sums of money from year to year by the county to keep the road in repair. The running of cars over the road will materially shorten the life of the road and completely destroy that portion of the road occupied by the tracks of railroad company. The running of cars would also be a public nuisance, and would be a constant menace to the lives and limbs of persons driving over the road, by reason of the narrowness of the road in many places. The railway com-

pany operates its cars by electric power. It has not exercised the right of eminent domain in and along the proposed route along the chert road, and has not taken any steps to condemn the property. A large portion of the territory through which the railway company proposes to construct its line of road is outside of and not included in any corporate town or village or city, but is in the county proper. Two steam railroad companies and one electric street-line company run their accommodation cars along by the side of and parallel with the proposed route of the street-railway company, and the public is afforded ample transportation facilities for all travel along the chert road at the same cost and expense to the public as the street-railway company would give. The chert road is in daily and constant use as a business and pleasure thoroughfare. The street-railway company has never obtained a franchise from the authorities of the county to lay its tracks along such road from the terminus of the road in the City of Atlanta to the line of Oakland City; and should such consent not be given, the tearing up of the road in Oakland City would be of no use to the railway company and would render the same less easy for use by the public. The prayers of the petition were, that the street-railway company be enjoined from disturbing or in any manner interfering with the chert road, either for the purpose of laying its poles along the sides of the road, or by removing any of the chert from the surface of the road for the purpose of laying its tracks or operating its cars thereon; that the franchise or license granted the railway company by the mayor and council of Oakland City be declared to be null and void; that the mayor and council of Oakland City be enjoined from making any further franchise or grant to the street-railway company to lay its tracks or run its cars over the chert road; and for general relief. The plaintiffs amended their petition by alleging that the street-railway company was, under its franchise from the mayor and council of Oakland City, to obtain the land necessary for widening the road before disturbing the road south of Oakland avenue; that a portion of this space has not been secured; that the street-railway company could easily construct its road alongside of and within seventy-five feet of the chert road.

It is also alleged that the street-railway company has no right, power, or authority vested in it to extend its line and operate its road along the proposed route, and that, having no authority to so extend its line of road, so doing would be a continuing public nuisance and a tort. Mrs. Abi Mims filed an intervention in the cause, making certain allegations and joining in the prayer for injunction; but as she is not a party plaintiff in error in this court, it is unnecessary to set out the allegations of her intervention.

The defendant railway company answered, denying the material allegations contained in the petitions; and averring that the mayor and council of Oakland City had authority to grant to it a franchise to lay its tracks along the chert road in that municipality, that it had authority to accept such franchise, and that it is prepared and proposes to comply with the conditions of the grant. The mayor and council of Oakland City answered, denying the material allegations of the petitions; and averring that they had complete authority to grant the franchise, that the railway company was excavating and preparing to lay its tracks under the authority of the mayor and council, that this authority is sufficient, complete, and exclusive, and that the village of Oakland upon its incorporation adopted the road as one of its streets and has ever since had regular work done thereon by its authority. At the hearing there was testimony for the plaintiffs, by certain members of the board of commissioners of roads and revenues of Fulton county, to the effect that that portion of the chert road which runs through the village of Oakland City was laid out and improved by the County of Fulton and at its expense, and that Oakland City has never exercised nor claimed any right over the chert road running through that village. There was also testimony in behalf of plaintiffs, that when chert has been properly laid and pressed on a public road it becomes hard and firm as cement; but that when any portion of it is dug up and cross-ties put down for rails, the chert will not adhere to such material, and the operation of a street-railway upon it would considerably shorten its life and its efficiency be destroyed. The charter of the Atlanta Consolidated Street Rail-

way Company was also introduced in evidence. This charter creates the railway company a corporation for the purpose " of constructing, maintaining, and operating a railroad, to wit, a system of street and suburban railroads for public use in the conveyance of persons and property, in the counties of Fulton, DeKalb, and Cobb, in Georgia, through the various streets of Atlanta, Georgia, and from Atlanta to Decatur and through and over the streets of Decatur, and from Atlanta to and through West End to West View Cemetery, and on, over, and along the streets of said Atlanta, Decatur, and West End, and to such localities in said counties of Fulton, DeKalb, and Cobb as may be convenient or expedient, and returning to Atlanta; provided that, when the streets of any city or town and roads of said counties are occupied, consent must first be obtained from the proper authorities." During the hearing the street-railway company admitted that it had not secured any portion of Mrs. Abi Mims's property lying along the chert road in Oakland City; that the railway company had erected south of Oakland avenue in Oakland City four poles on which to hang trolley-wires, but that the same was done by mistake and that no more work would be done south of Oakland avenue until all the requisite property had been secured. A witness Murphy, sworn in behalf of the defendants, testified that he is the owner of all the land lying on the west side of the chert road between the City of Atlanta and the town of Oakland City, and that he has tendered and now tenders sufficient land to defendant railway company to run its track and make its construction between the line of the City of Atlanta and the town of Oakland City, in case the right is not given by the authorities of the county. Woodruff, the president of the defendant railway company, testified that the company had obtained a franchise from the City of Atlanta to its limits on the chert road; that it had obtained a franchise from the town of Oakland City through its limits; and that if it can not obtain from the county authorities a franchise to use the space intervening between the limits of the City of Atlanta and the town of Oakland City, it will accept the tender of the witness above referred to, and construct its road; that it is the purpose of the company to carry out

all of the provisions of the ordinance granting the company the right to build and operate the road through the limits of Oakland City. It appears from the ordinance granting the franchise that substantially the same conditions, among others, as those enumerated above in the petition were imposed upon the railway company. It further appears distinctly that the grant was not to be exclusive, but the town reserved the right to grant other street-car franchises along the same road.

After considering the petition, intervention, answers, evidence, and certain demurrers filed by the defendants, the judge denied the injunction, and the plaintiffs excepted. The bill of exceptions assigns error upon the refusal of the judge to admit in evidence certain testimony offered by the plaintiffs. The testimony rejected was that of witness Adair, to the effect that he knew of his own knowledge that that portion of the chert road running through the village of Oakland City is under the dominion and control of the County of Fulton and that it has never dedicated the use of the same or any portion thereof to any person or corporation, but the road is a public road and belongs to the county as such. Further testimony rejected was that of Mrs. Abi Mims, to the effect that the construction of the railway would be dangerous to the public and an unnecessary menace to the lives and limbs of those who use the road, by reason of the narrowness of the road; also, that the street railway has never procured or attempted to procure from her the additional six feet adjoining her land and necessary to a compliance by it with the condition precedent imposed upon it by the grant of the franchise to use the road. Other evidence was rejected, to the effect that the operation of cars on the road would be dangerous to the public and would be attended with damage to the road. The bill of exceptions also assigns error upon the admission by the court, over the plaintiffs' objection, of the evidence of the witnesses Murphy and Woodruff, the same having been objected to as being irrelevant and immaterial.

1. On May 16, 1891, the secretary of State granted a charter to the Atlanta Consolidated Street Railway Company, upon an application which had been made under the provisions of the

act of 1881. (Code of 1882, §§ 1689 (a) et seq.)    On August 31, 1891, an act was approved which in terms confirmed all charters theretofore granted by the secretary of State to street and suburban railway companies, and declared that such charters had full effect from their dates.    Acts 1890–91, p. 169. The powers contained in the charter of the defendant railway company, which are material in the present investigation, are set out in the statement of facts.    The town of Oakland City was not in existence at the time that this charter was granted, having been incorporated by an act approved December 12, 1894.    Acts 1894, p. 177.    The authorities of the town have granted to them only the usual powers given to municipal corporations in reference to the control of streets.    The charter does not confer upon the municipal authorities any express power to authorize its streets to be used by railway companies of any character.    It is the settled law of this State, that a municipal corporation, unless it has express legislative authority so to do, can not permit a railroad using steam as a motive power to occupy one of its streets longitudinally.    *Augusta* v. *Railway Company,* 74 *Ga.* 658; *Kavanagh* v. *Railroad Company,* 78 *Ga.* 271; *Railroad Company* v. *Augusta,* 100 *Ga.* 701; *Daly* v. *Railroad Company,* 80 *Ga.* 793, 799.    In *Davis* v. *Railway Company,* 87 *Ga.* 605, it was held that the word "highway" as used in that section of the Code of 1882 which is now contained in section 2233 of the Civil Code, declaring that "public highways, bridges, or ferries can not be appropriated to railroads, plank roads, or any other species of road, unless express authority is granted by some constitutional provision of their charter," included the streets of an incorporated town or city.    The provisions of this section would seem to be broad enough to include street-railroads, and therefore it would seem to follow that express legislative authority must be conferred upon a municipal corporation to authorize it to permit its streets to be occupied longitudinally by a street-railway company.    The authorities are conflicting as to whether the powers over streets usually granted to municipal corporations are sufficient to authorize them to permit street-railways to use the streets longitudinally, but the weight of authority seems

to be that they are not. We do not, however, deem it necessary in the present case to definitely decide whether or not such powers are sufficient. See Booth, St. R. Law, § 15; 2 Dillon's Mun. Corp. § 717 et seq; Beekman v. Railroad Company, 47 N. E. (N.Y.) 277; Milhau v. Sharp, 17 Barb. 435; Atty. Gen. v. Railroad Company, 10 Phila. 352; Eichels v. Street Railway Company, 78 Ind. 261; Boston v. Richardson, 13 Allen, 146, 160; Davis v. New York, 14 N. Y. 506; Street Railway Company v. Covington, 9 Bush, 127; Railroad Co. v. Railroad Co., 22 So. (Fla.) 692. While there is no express authority in the charter of the town of Oakland City authorizing it to permit such use of its streets, there is authority in the charter of the railway company which authorizes it to "construct its road across or along or upon, or to use, any . . street . . which the routes of its road shall intersect or touch." Code of 1882, § 1689(i). This grant is, however, subject to that provision of the constitution which declares that "The General Assembly shall not authorize the construction of any street passenger-railway within the limits of any incorporated town or city, without the consent of the corporate authorities." Civil Code, § 5782. And the charter granted to the railway company recognized that it can not go upon the streets of any city or town without first obtaining the consent of the municipal authorities, for it expressly named all cities and towns in existence at the date of the charter whose streets the railroad company contemplated using for the purposes of the corporation; and it being foreseen that the corporation might desire to construct its lines of road in the future through localities where towns or cities might be incorporated since the granting of the charter, provision was distinctly made in the charter for this contingency. Oakland City as a municipal corporation has come into existence since the date of the charter of the railway company. Its charter gives it no express authority to permit the use of its streets by a street railway. The General Assembly has, however, given the defendant railway company authority to use the streets of this town upon one condition, that is, that it obtain the consent of the municipal authorities. The charter of the railway company granted under the act of

1881, confirmed by the act of 1891, is legislative authority for the corporation to use the streets of the town of Oakland City, whenever the authorities of that town shall give their consent to their streets being so used.  If the railway company had no charter authority to use the streets of the town, consent by the authorities of the town would be ineffectual to confer such power; but the railway company having such charter power, and the constitution impliedly recognizing that any city may consent to such use of its streets, it has the power to do so. The authority to construct a railway along a street may, therefore, be derived either from the charter of the city or from the charter of the railway company that is applying for the use of the city's streets.  See in this connection *Hope* v. *Gainesville*, 72 *Ga.* 246.

2.  It is contended, however, that even if the municipal authorities of Oakland City had power to consent to the use of its street by the defendant railway company, that alone is not sufficient to authorize the railway company to lay its tracks along such street, for the reason that the street sought to be appropriated was, before the creation of the municipal corporation, a public road of the county of Fulton, and that after such municipality came into existence the county authorities, with the consent of the municipal authorities, expended a large amount of money in improving that part of the former public road which is embraced within the limits of the town; that the improvement was of such a character as to show that the county authorities still maintained jurisdiction over the street, and that therefore the street, though within the town, is a public road of the county, and consent of the county authorities is absolutely essential before there can be any appropriation of the street by the railway company.  The record discloses that the county has expended a large sum of money in improving this street in the town, and that this was done with the consent of the town authorities.  The county authorities being interested in securing an improved highway from the City of Atlanta to the county line, in their discretion saw proper to continue the improvement through this municipality.  No doubt the question presented to the

county authorities was whether they should improve the entire highway in a uniform way or leave to the authorities of the towns and cities along the line to determine whether they would make an improvement within their limits similar to the improvement the county was making on either side of the towns. The question to be determined in the present case is: Did the improvement made by the county authorities within the limits of the town of Oakland City have the effect of giving to the county authorities jurisdiction over the street to the exclusion of the authorities of the town? Before the town was incorporated the highway in question was for years one of the public roads of the county, and prior to the date of the charter of the municipal corporation the county of course had exclusive jurisdiction over this highway. The moment that the legislature created the municipal corporation and gave it jurisdiction and control over its streets and fixed the limits of the corporation so as to embrace therein as one of its streets a part of what was formerly a county highway, the jurisdiction of the county over this part of the highway ceased, and the same became subject to the control and jurisdiction of the municipal authorities. Elliott, Roads and Streets, 312 et seq. ; Brown *v.* Hines, 44 N. E. (Ind.) 655. The town authorities, therefore, still have complete control over the street, unless they have done some act which under the law would amount to a relinquishment of such control and have the effect of revesting control over the street in the county. If the authorities of a municipal corporation see fit to permit individuals, private corporations, or even the authorities of the county in which such municipality is located, to expend money in improving one of the streets of the municipality, this will not have the effect of relinquishing control over such street and placing the same under the jurisdiction of those who have made the improvements upon it. When the improvement is completed, although the street may be radically changed, it is still a street of the city and under its control. Especially is this true when after this improvement has been made the municipal authorities show that they never intended to abandon their control over the street, by having the usual and necessary repairs made upon the same in

order to maintain it in the improved condition in which it was left by those who have seen fit to expend money in making the inprovement. It goes almost without saying that any municipality would grant permission to any person or corporation so disposed to voluntarily and gratuitously pave and improve one of the streets of the municipality; and the mere fact that the authorities take advantage of an offer of this character and allow the improvement to be made would not amount to a relinquishment of control over the street thus improved. It is contended that the contrary was ruled by this court in the case of *Daniels* v. *Athens*, 54 *Ga.* 79, and that the ruling there made was followed when the same case came before this court again, in 55 *Ga.* 609. We think those cases are clearly distinguishable from the present one. In the present case the street of Oakland City is simply a strip of land extending from the northern to the southern limits of the town, and the improvement made by the county authorities was merely a paving of this strip of land. It was a complete and perfect street before, and could be used for all the purposes of a street. The action of the county authorities did not make a street in the town, but simply rendered more useful and suitable for travel an existing street which would have been used as a street had the improvement not been made. In the *Daniels* case the City of Athens was divided by a watercourse, and while there were streets on either side of the watercourse, there could be no connection between these streets until some method of crossing the watercourse was provided as a medium of connection. The city authorities permitted the county authorities to erect a bridge, and, it may be inferred from the record in the case, the necessary approaches and embankments. This structure (the bridge and its approaches), erected by the county, became a medium of connection between the streets of the city on either side of the watercourse. It was held that the bridge and its approaches were the property of the county, and that the city was under no obligation to repair the same, and was therefore not liable in damages to one who was injured by a defect in one of the approaches. In that case the county made a highway, with the consent of the city, where no highway had previously existed.

The city. authorities refused to recognize the highway thus made as belonging to them. In the present case the county authorities made no new highway in the town of Oakland, but merely made more convenient for travel a street already existing. See, in this connection, Elliott, Roads and Streets, 330; Seipp v. Rwy. Co., 118 Ill. 520; State v. Jones, 18 Tex. 874; Cowan's case, 1 Overt. (Tenn.) 310.

3. It was contended that the injunction should have been granted, because it did not appear that the county authorities had given their consent for the railway company to appropriate that part of the public road of the county between the City of Atlanta and Oakland City, and therefore it would be impossible for the railway company to construct and operate a continuous line as contemplated, and that the street in Oakland City ought not to be disturbed when it could never be used for the purpose for which it was intended by the company. There was evidence before the judge to the effect that, if there should be any difficulty in obtaining the consent of the county authorities to use that part of the road necessary to make the line continuous, the railway company could and would acquire the necessary property contiguous to the road in question. This evidence was objected to as being irrelevant and immaterial, but we think it was properly admitted; and being admitted, it disposes of the contention above referred to. The evidence which was rejected, even if admissible, was not of such a character as to have justified the granting of the injunction. There was evidence before the judge authorizing a finding by him that the railway was proceeding in good faith to comply with the conditions imposed upon it by the authorities of the town of Oakland City; and, upon the case as a whole, we think there was no error in refusing the injunction.

*Judgment affirmed. All the Justices concurring.*