## COMMISSIONERS OF POLK COUNTY *v.* MAYOR AND COUNCIL OF CEDARTOWN.

When the corporate limits of a city are so extended as to embrace therein a portion of a public highway and a bridge over a stream crossing the same, the municipal authorities at once acquire the right to exercise jurisdiction over the bridge, and are chargeable with the duty of keeping it in repair after the county authorities have expressly relinquished such jurisdiction, which they may do with or without the assent of the municipal authorities.

Argued April 28, — Decided May 14, 1900.

Mandamus.     Before Judge Janes.     Polk superior court. March 30, 1900.

*Blance, Irwin & Wright,* for plaintiffs in error.
*Sanders & Davis,* contra.

Cobb, J.   The Mayor and Council of the City of Cedartown filed their petition praying that the writ of mandamus might issue to require the county commissioners of Polk county to repair, and, if necessary, rebuild a bridge which had been constructed under the direction of the county authorities.   The petition set forth, in substance, the following:   In 1889 the county commissioners ordered that a named person should proceed as early as practicable to purchase material to build a bridge across a named stream.   In pursuance of this order the bridge was built at the county's expense, and was kept in repair by the county authorities for a number of years.   At this time the road of which the bridge formed a part was not within the corporate limits of the City of Cedartown.   After the building of the bridge the limits of the city were extended so as to embrace within the same the bridge in question.   On September 19, 1898, the county commissioners passed the following order: "Ordered that the authorities of Polk County relinquish all jurisdiction or control of all the bridges or causeways inside the incorporate limits of Cedartown and Rockmart, and will not be responsible for any damages to the public caused by any bridges or causeways inside of said incorporate limits." In 1899, the bridge being out of repair, the city authorities requested the county authorities to repair the same, and notified

them that the city did not claim the right to exercise any juris-
diction over the bridge. The county authorities declined to re-
pair the bridge, giving as a reason that the same was within
the corporate limits of the City of Cedartown. The answer
of the respondents was, substantially, as follows: They ad-
mitted that the bridge had been built by the county authori-
ties, but alleged that since the same had been taken within the
limits of the city the county authorities had neither made nor
authorized to be made any repairs on the bridge, recognizing
that, after the limits of the city had been extended so as to em-
brace the bridge, the same passed under the jurisdiction and
control of the city. The order referred to in the petition was
passed at a regular meeting of the county commissioners. The
case came on to be heard, and a judgment was rendered making
the mandamus absolute and requiring the respondents to keep
the bridge in repair, and, when necessary, to rebuild the same;
the judgment reciting that there was no issue of fact involved
in the case. To this judgment the respondents excepted.

The moment that the charter of the City of Cedartown was
so amended as to embrace within the limits of that corporation
that portion of the public road of which the bridge in question
formed a part, the jurisdiction of the county over this part of
the highway ceased, and the same became subject to the control
and jurisdiction of the municipal authorities. See *Almand* v.
*St. Ry. Co.,* 108 *Ga.* 417, and authorities there cited. Conse-
quently, the duty of the municipal authorities to keep in repair
the bridge in question arose as soon as it became a part of one
of the streets of the city, and the county was no longer under any
duty in respect thereof. Such being the case, no order or pro-
ceeding of any character was necessary in order to relieve the
county authorities of the obligation to keep the bridge in repair.
Especially would the county authorities no longer be under any
obligation to keep the bridge in repair, when it affirmatively ap-
pears that since the same has become a part of one of the streets
of the city they have never undertaken to repair the bridge, but
on the other hand, by order duly passed, have expressly relin-
quished all jurisdiction and control over it. Even if the law in
regard to the abolition of a public road is applicable to bridges,

it is not necessary that such law should be followed in a case like the present, where the former county bridge becomes by legislative enactment a part of one of the streets of the city embraced within the county, and the county authorities from the date of the act acquiesced in such change by declining to make repairs upon the same as a county bridge. We do not mean to hold that the county authorities may not, if they see proper to do so, build bridges within the corporate limits of cities and towns or improve the streets of towns and cities embraced within the limits of the county. What is now held is, that where a road or bridge which is a part of a county road has by an amendment to a city charter been brought within the corporate limits of the city, the obligation on the part of the county to keep such road or bridge in repair immediately ceases. This case differs from *Daniels* v. *Athens, 54 Ga.* 79, 55 *Ga.* 609. In that case the county authorities, with the consent of the municipal authorities, built a bridge within the city limits, which was treated both by the county and the municipal authorities as a county bridge. It was held that under such circumstances the city was under no duty to keep the same in repair, notwithstanding the fact that it had at one time contributed a portion of the money necessary to rebuild the bridge. It was not held in the *Daniels* case that the county was under any obligation to build the bridge, but simply that, having voluntarily built the bridge with the consent of the municipal authorities, it was under a duty to keep the same in repair, and that this duty did not rest upon the municipal authorities. There was nothing in that case indicating that the county had relinquished control over the bridge thus built by it. On the contrary, it distinctly appeared that it had exercised jurisdiction and control over the bridge, and that the repairs made by the city on the bridge were permissive and entirely gratuitous on its part. The ruling made in the *Daniels* case would certainly authorize the county authorities to have retained control over the bridge involved in the present case, if they had seen proper to do so, but nothing therein ruled required that they should.

The judge erred in making the mandamus absolute.

*Judgment reversed. All concurring, except Fish, J., absent.*