## BOARD OF COMMISSIONERS OF SUMTER COUNTY v. MAYOR AND CITY COUNCIL OF AMERICUS.

The act of the General Assembly, approved August 11, 1913 (Acts 1913, p. 438), "authorized and required" the Board of Commissioners of Roads and Revenues of Sumter County to work the county chain-gang of that county upon the streets of the City of Americus for not exceeding three months in each year, using in such work, if necessary, everything pertaining to the convicts and to the road equipment; the work to be done at such times as may be suitable to the board and at such places as may be designated by the mayor and city council; the streets to be worked and graded under the direction of such person or persons as "are so authorized" by the city; the city not to pay any part of the expense of maintaining the county convicts. At the time of the passage of this act, the general "alternative road law" (Civil Code, §§ 694 et seq.) was in force in Sumter county, and the act of 1908 (Penal Code, §§ 1207 et seq.) was also in effect. *Held,* that the special act of August 11, 1913, above referred to, is unconstitutional and void because violative of the constitutional provision declaring that no special law shall be enacted in any case for which provision has been made by an existing general law.

APRIL 17, 1914.

Mandamus. Before Judge Littlejohn. Sumter superior court. December 31, 1913.

*W. T. Lane* and *R. L. Maynard,* for plaintiffs in error.

*W. P. Wallis* and *Hollis Fort,* contra.

FISH, C. J. The Board of Commissioners of Roads and Revenues of the County of Sumter, upon the recommendation of the grand jury of that county, adopted the "alternative road law" as embraced in the Civil Code, §§ 694 et seq., and are working the convicts, both felony and misdemeanor, upon the public roads of the county. On August 11, 1913, a special act was approved (Acts 1913, p. 438), authorizing and requiring the commissioners of roads and revenues of that county to work the county chain-gang force upon the streets of the City of Americus, to prescribe the length of time for such work, and the regulation under which it should be done. After the passage of such act, demand was made by the Mayor and City Council of Americus upon the Board of Commissioners of Roads and Revenues that the county chain-gang force should work the streets of the city in accordance with such special act. The board of commissioners refused to comply with the demand, whereupon the mayor and city council filed a petition for mandamus against the board of commissioners to compel them to

work the streets of the city as required by the special act. A rule nisi was served on the members of the board, requiring them to show cause why a mandamus absolute should not be granted. The petition was filed, and the hearing was had thereon in term, when the board of commissioners demurred to the petition upon various grounds, among which was, that such special act was void because it was unconstitutional, in that at the time of its passage there was a general existing law wherein provision had been made as to the same subject-matter. The demurrer was overruled, and the board of commissioners excepted. The special act above referred to is as follows: "That the Board of Commissioners of Roads and Revenues of Sumter County be and they are hereby authorized and required to work the county chain-gang of said County of Sumter upon the streets of the City of Americus for not exceeding three months in each year after the passage of this act, beginning with the present year 1913, except that said board are not authorized and required to work longer than forty days during the present year upon said streets. At such times, all mules, plows, wagons, scrapes, utensils, guards, and all other things pertaining to the convicts and to the road equipment shall be used, if necessary, upon the streets of the City of Americus free of charge to said city. The county convicts and road force shall do such work at such places as may be designated by the Mayor and City Council of the City of Americus, or its authority. The streets shall be worked and graded under the direction of such person or persons as are so authorized by the Mayor and City Council of Americus; and the Mayor and City Council of Americus shall not be called upon or required to pay any portion or any part of the expense of feeding, maintaining, guarding, or caring for said county convicts."

The only point we deem it necessary to determine is whether such special act is violative of article 2, section 4, paragraph 1 (Civil Code, § 6391), of the constitution of this State, which declares that no special law shall be enacted in any case for which provision has been made by an existing general law. It may be remarked in passing that it is a somewhat curious coincidence that the next paragraph of that section of the constitution, which immediately follows the one which contains the declaration above stated, provides that "Legislative acts in violation of this Constitution, or the Constitution of the United States, are void, and the judiciary

shall so declare them." Whether this juxtaposition was the result of accident or whether the framers of the constitution in their wisdom foresaw the frequency with which it would be sought to enact special laws in cases for which provision had been made by a general law, and the consequent necessity of declaring them invalid, and thought it a most appropriate place to locate the mandatory provision that the courts should declare acts in contravention of the constitution void, we do not know. However that may be, the violation of the first paragraph of this section not infrequently renders it the duty of this court to declare void special acts in cases already provided for by existing general laws.

The first question which presents itself is, whether the constitutional provision prohibiting the enactment of special laws in cases for which provision has already been made by existing general law applies to the method of dealing with the working of convicts and chain-gangs by county commissioners. By article 6, section 19, paragraph 1, of the constitution (Civil Code, § 6548), it is declared that "The General Assembly shall have power to provide for the creation of county commissioners in such counties as may require them, and to define their duties." And by article 11, section 3, paragraph 1 (Civil Code, § 6600), it is declared: "Whatever tribunal, or officers, may hereafter be created by the General Assembly, for the transaction of county matters, shall be uniform throughout the State, and of the same name, jurisdiction, and remedies, except that the General Assembly may provide for the appointment of commissioners of roads and revenues in any county." It was urged that under this section the legislature had authority to create a board of county commissioners in Sumter county and to define their duties; and that under this power they could impose upon such county commissioners the duty of having the streets of Americus worked by the county chain-gang under the direction of the municipal authorities. The different provisions of the constitution are to be construed as in harmony with one another rather than as contradictory. Construing together the two sections last quoted, it is evident that the constitutional intent was that generally the tribunal or officers created for the transaction of county matters should be uniform throughout the State, and have the same name, jurisdiction, and remedies, but that the legislature might provide for the creation of county commissioners

in such counties as should require them, and define their duties, without being restricted by the general provision just mentioned. That body has the power to pass separate and distinct acts creating county commissioners for any county which requires them, and it is not necessary that these acts shall be uniform in their operation in all such counties by reason of the clause of the constitution providing generally for uniformity in name, jurisdiction, and remedy in regard to officers created for the transaction of county matters. Such acts frequently contain differences in the powers conferred upon the commissioners, in the manner of their election, as to their number and compensation, and in other respects. *County of Pulaski* v. *Thompson & Co.*, 83 *Ga.* 270 (4), 273 (9 S. E. 1065) ; *Sayer* v. *Brown*, 119 *Ga.* 539 (46 S. E. 649). This provision in regard to the creation of county commissioners and defining their duties was not intended, however, to authorize the legislature to violate every other provision in the constitution under the name of defining the duties of the county commissioners; and if it should be held that the authority of the legislature on this subject is without limit, then that body could confer upon any board of county commissioners authority to issue bonds without having an election as required by another section of the constitution; or it could authorize a board of commissioners to elect a judge of the superior court, or to elect a tax-collector or other county officer, or to levy a tax without any limitation upon the property of the taxpayers, or in fact to exercise arbitrary and autocratic powers without regard to any constitutional provision as to how such powers shall be exercised or by whom. It will hardly be contended that because the legislature was given the power to create county commissioners and define their duties, without being restricted to the provision in regard to uniformity as to officers conducting county affairs, such unrestricted and unlimited powers to do acts at variance with other constitutional limitations could be conferred upon them. Nor will it be contended that, where an uniform system of levying and collecting taxes in all the counties of the State has been prescribed, the legislature, under the name of creating a board of county commissioners and prescribing their duties, can authorize them to collect taxes at a different time, of different amounts, and in a different manner from all other counties. It has been practically held by this court that the clause of the constitution authorizing the legislature to

35

create a board of county commissioners and to define their duties is to be construed in harmony with and not as destructive of the other clause of the same instrument which declares that no special law shall be enacted in any case for which provision has been made by an existing general law. In *Atkinson* v. *Bailey,* 135 *Ga.* 336 (69 S. E. 540), it appeared that a general law existed which provided for the compensation of the sheriffs of the State for official duty performed by them. A special act was passed which authorized the county commissioners of roads and revenues of Camden county to pay the sheriff of that county a salary of $400 annually, in addition to the fees allowed by law to such sheriff, whenever the same should be recommended by the grand jury. It was held that this act was a special law dealing with a subject-matter for which provision was already made by an existing general law, and was unconstitutional. There is a wide difference between holding that county commissioners created by distinct acts for different counties do not have to be uniform in regard to name, jurisdiction, and remedy, and holding that the legislature may confer upon them authority to do anything whatever, regardless of other constitutional prohibitions. This difference is recognized in *Sayer* v. *Brown,* supra, where it was held that the question as to whether the act then under consideration violated the clause of the constitution prohibiting the passage of a special law in any case for which provision has been made by an existing general law was sufficiently raised to require a decision of this court. The case of *Churchill* v. *Walker,* 68 *Ga.* 681, was relied on. Under the constitution of 1868, as well as that of 1877, the legislature was authorized to provide for the creation of county commissioners in such counties as might require them, and to define their duties. Commissioners were created for the county of McIntosh in which was located the town of Darien, and one of the duties put upon them was the exercise of the corporate authority of such town. This was held not to be unconstitutional. There was no general law operative throughout the State requiring all towns and cities to be governed in an uniform manner and by the same officials; nor did the constitution of 1868 contain a prohibition against the enactment of a special law in cases in which provision had already been made by a general law. It was there held that a municipal corporation is a creature of legislation, and that its modes of government and the

officers conducting the same may be changed by the legislature. It will thus be seen that the case last cited in no wise controls the question now under discussion.

Holding, therefore, that the clause of the constitution which authorized the legislature to create county commissioners and to define their duties is not to be taken as wholly abrogating the other clause of the constitution which provides that no special law shall be passed in cases for which provision has already been made in regard to a given subject-matter by general law, we next inquire whether provision has been made by an existing general law or laws on the subject dealt with by the special act of 1913 in regard to Sumter county and whether that act conflicts with such general law. It was alleged in the petition that the "alternative road law," as embraced in the Civil Code, §§ 694 et seq., was in force in Sumter county. In *Mattox* v. *Knox,* 96 *Ga.* 403 (23 S. E. 307), it was held that the code adopted prior to the date of that decision (July 8, 1895), as modified by other general legislation upon the subject, had established a system of road law, general in its nature, and of uniform operation throughout the State; that it prescribed in general terms how and by what instrumentality public roads are to be established, laid out, and maintained; and that after the adoption of the constitution of 1877 the legislature was without authority to pass a local act prescribing for a particular county a system of road law different from that provided by the general road law of the State. *Futrell* v. *George,* 135 *Ga.* 265 (69 S. E. 182). By the Civil Code, § 697, it is declared that the authorities are authorized to work, improve, and repair the public roads in certain ways: (1) they may work the chain-gang and persons who do not pay the commutation tax; (2) they may work free hired labor and those who do not pay the commutation tax; (3) they may have the roads worked, improved, or repaired, by contracting for the same, in such manner as they may deem fit, with private parties, or corporations; (4) they may employ or combine any or all of said three above-mentioned methods, or may use any other method or system that may be desired for accomplishing the work necessary to put and keep the public roads in good condition. By the act of August 11, 1913, it was declared, that the board of commissioners of roads and revenues of Sumter county were authorized and required to work the county chain-gang of the County of Sum-

ter upon the streets of the City of Americus for not exceeding three months in each year; that at such times, all mules, plows, wagons, scrapes, utensils, guards, and all other things pertaining to the convicts and to the road equipment shall be used, if necessary, upon the streets of the City of Americus free of charge to the city; and that the streets shall be worked and graded under the direction of such person or persons as may be authorized for that purpose by the mayor and council of the city. It will be readily seen that the requirements of the local act do not accord with the discretionary powers conferred upon the county authorities by the general law on the subject of working, improving, and repairing the roads. Were there no general law on the subject, there might be diversity of powers conferred upon county commissioners by local acts; but where the subject of working the roads has been dealt with by a general law, it can not be changed by such local acts. Again, the Penal Code, § 1065, declares, that, except where otherwise provided, every crime declared to be a misdemeanor is punishable by a fine not to exceed $1,000, imprisonment not to exceed six months, to work in the chain-gang on the public roads, or on such other public works as the county or State authorities may employ the chain-gang, not to exceed twelve months, any one or more of these punishments in the discretion of the judge, etc. This included the section as it stood in the Code of 1895 as amended by the act of 1908 (Acts 1908, p. 1119). By the last-mentioned act other provisions were made, in regard to the future employment of felony and misdemeanor convicts, which are to be considered together with the section just quoted as making general provisions on that subject. By the second section of that act, now codified in section 1207 of the Penal Code, it is declared that "All male felony convicts, except such as are now required by law to be kept at the State farm, may, after March 31st, 1909, be employed by the authority of the several counties and municipalities upon the public roads, bridges, or other public works of said counties or municipalities, as hereinafter provided," etc. The expression, "by the authority of the several counties and municipalities," is not to be taken alone as conferring indiscriminate power upon counties and municipalities, but upon one or the other as later provided in the act. In the same section provision is made for county authorities desiring to use convict labor upon their public roads to advise the

Prison Commission of that fact and of the number of convicts desired, and for the manner in which the Prison Commission shall apportion felony convicts to the different counties so requiring them. It provides that "any two or more of said counties of this State may combine for the purpose of working and improving the roads of their respective counties, by and with the consent and approval of the Prison Commission;" and also that "a county shall have the right, upon the approval of the Prison Commission, to deliver its quota of felony convicts and also its misdemeanor convicts, if it so desires, to another county, to be used in the construction and repair of public roads, bridges, or other public works, and the county so receiving such convicts shall have the right to compensate the county from which the convicts came, with work upon its public roads, bridges, or other public works, or by the exchange of an equal number of convicts." By section 1211 it is declared: "After the counties have been provided with convicts as set forth, and if there should remain any convicts not otherwise disposed of, then the privileges conferred upon counties herein shall be extended to municipalities of this State, which shall have the right to hire convicts from the Prison Commission, in such numbers as might be agreed upon, at the price of one hundred dollars per capita per annum." Other provisions are made in regard to the authority and supervision of the Prison Commission. In regard to felony convicts, it will thus be seen that certain provisions were made in regard to counties, and other provisions in regard to municipalities; and these were what were referred to by the words "as hereinafter provided." Here, then, was a general law dealing with the subject of the working of felony convicts by counties upon the county roads, authorizing county authorities to deal both with felony and misdemeanor convicts in certain ways, and also making provision under certain circumstances for hiring, by the Prison Commission, of felony convicts to municipalities. The local act of 1913 in regard to Sumter county requires the county commissioners to have the county chain-gang work upon the streets of Americus for not exceeding three months in each year. This mandate of the local act can not be reconciled with the powers conferred upon the county authorities by the general law. They can not be forced to exercise those powers and at the same time be bound to comply with the terms of the act of 1913. It was said in

argument that the local act did not in terms refer to felony convicts, but there is nothing to indicate that felony and misdemeanor convicts were to be worked separately; and if all of the mules, scrapes, and other appliances for working roads were required to be used within the corporate limits of Americus for three months in the year, there would seem to be nothing left for the felony convicts to work with, if they were not also included with the laborers upon the municipal streets. They could not well continue to work the county roads as contemplated by the general law, if everything pertaining to road-work was being used in the City of Americus and they alone left on the outside. It is hardly probable that the act of 1913 intended any such thing.

It was further argued, however, that the streets of the City of Americus were a part of the county roads or of the public works of the county, and that the county commissioners could be required to keep in repair this branch of their roads. In 1 Elliott on Roads and Streets (3d ed.), § 503, it is said: "It is obvious that the officers having control of county affairs can not justly be permitted to control the streets of a city, and for this conclusion there are at least two satisfactory reasons. It would violate the principle of local self-government to permit officers elected to govern one corporation to control the public ways within another and distinct corporation, for the officers of one corporation can not be considered the representatives of another and different corporation. It is not the officers who constitute a public corporation, nor the frame of its government, but the people of the locality. The legislature may provide a frame or form of government, but it can not in the true sense create a town or city, because towns and cities are composed of the inhabitants who dwell in a designated territory." Blocker *v.* State, 72 Miss. 720 (18 So. 388), and cases cited. It is not necessary to discuss how far the legislature may deal with the streets of a municipality; but we quote the above authority as showing that, ordinarily, county roads and municipal streets are not treated as the same; and when provision is made for one, it is not usually construed as including the other. See also *Almand* v. *Atlanta Con. St. Ry. Co.*, 108 *Ga.* 417 (34 S. E. 6); *Commissioners of Polk County* v. *Cedartown*, 110 *Ga.* 824 (36 S. E. 50). The case of *Daniels* v. *Mayor etc. of Athens*, 54 *Ga.* 79 (s. c. 55 *Ga.* 609), involved peculiar facts where a county and municipality had cer-

tain agreements in regard to a bridge erected across a stream by the county, and over which jurisdiction was retained. Without discussing the soundness of the reasoning in that case, it has been differentiated, on account of its peculiar facts, in *Commissioners of Polk County* v. *Cedartown,* supra.

The decision in *Lark* v. *State,* 55 *Ga.* 436, was also relied on. In that case a prisoner was convicted, in the county court of Richmond county, of the offense of simple larceny, and was sentenced to work in the chain-gang "on the streets of Augusta for twelve months." On a writ of habeas corpus it was held that while the sentence was irregular, it was not such as to entitle the prisoner to be discharged from custody. In the decision broad language was used as to whether the streets of Augusta were included in the public works of Richmond county, and also as to whether the relator acquiesced in the sentence by not objecting to it and seeking to have it reversed. But, however that may be, the act of 1908, making the general provisions above described in regard to felony convicts and also in some respects in regard to misdemeanor convicts, had not been passed when that decision was rendered (1875), nor had the constitution of 1877 been then adopted. It is unnecessary to discuss whether county authorities could, if they saw proper, do work upon the streets of Americus with the approval of the municipal authorities, or whether that would be beyond the contemplation of the general law. The local act now under consideration undertakes to require the county commissioners to have the convicts on the county chain-gang work the streets of the municipality under the direction of the municipality. From what has been said above, it will appear that this is a local act undertaking to deal with a subject-matter for which provision has already been made by existing general law; and it is therefore invalid. It follows that the court below erred in overruling the demurrer to the petition.

> *Judgment reversed. All the Justices concur.*