## MITCHELL COUNTY *et al. v.* COCHRAN *et al.*

The county authorities were not authorized to expend the proceeds of the sale of bonds issued by the County of Mitchell for the purpose of raising money with which to pave and grade the public roads in that county, for the pavement or grading or improvement of streets in the municipality of Pelham; and the court did not err in granting an injunction to restrain them from so doing.

No. 5031. SEPTEMBER 28, 1926.

Injunction. Before Judge Custer. Mitchell superior court. July 18, 1925.

G. M. Cochran and others, alleging themselves to be citizens and taxpayers of the County of Mitchell, brought their petition for injunction against the commissioners of roads and revenues of that county and against the J. D. Davis Construction Company, of Fulton County, Georgia, seeking to restrain the board from spending any of the funds of Mitchell County, including the

---

Counties, 15 C. J. p. 586, n. 6; p. 587, n. 31; p. 635, n. 72, 73; p. 641, n. 60.

Highways, 29 C. J. p. 369, n. 20, 39.

road-bond funds, for the purpose of paving certain streets in the Town of Pelham, in that county, which streets, it was claimed, formed a part of the public-road system of the county. One of the grounds of the petition was that the County of Mitchell could not expend its money in improving the streets of a municipality, for the reason that the county had no authority to levy taxes for that purpose, and for the additional reason that to use the county's funds, either tax money raised by direct taxation or the proceeds of the road-bond fund, for the improvement of a street of a municipality·in the county, whether it formed a part of one of the public roads of the county or not, was in violation of a specified section of the constitution of the State of Georgia. The defendants answered this petition, and, among other grounds in opposition to the grant of an injunction, urged the following: "Defendants say that the money which they propose to use in doing said improvements on said roads through the Town of Pelham is derived from the proceeds of the sale of $400,000.00 worth of bonds issued by the County of Mitchell in the year 1919 for the purpose of paving and grading new and old roads in Mitchell County. In further answer to said paragraph these defendants show that it is provided in the call for the election preceding the issuance of said bonds, and in the order validating said bonds, that the proceeds to be derived from the sale of said bonds were to be used wholly for the paving and grading of new and old roads in Mitchell County; and that it is with a part of the proceeds derived from the sale of these bonds that these defendants propose to do the improving of the roads running through the Town of Pelham. In this connection these defendants show that after said bonds were validated and a portion of them sold, these defendants, as commissioners of roads and revenues of Mitchell County, having the responsibility of determining what roads in the county should be graded and paved, exercised their judgment and discretion in favor of paving the Dixie Highway from the northern corporate limits of the City of Camilla to the southern corporate limits of the Town of Pelham. This highway, in the judgment and discretion of the defendants, the commissioners of roads and revenues of Mitchell County, being among the most traveled highways in said county, and in view of the fact that it not only leads to the county-seat of the County

of Mitchell, but also connects two of the largest marketing places in said county, to wit, the Town of Pelham and the City of Camilla, it accommodates more travel and more traffic than perhaps any other ·road in the county; and in addition to this, in their judgment and discretion they determined that it would be the part of wisdom and good judgment to pave this highway for the additional reason that it was a State-aid road upon which State and Federal aid could be procured. In considering which roads of said county it would be most profitable to pave from the standpoint of their utility to the general · public, your defendants, the commissioners of roads and revenues of Mitchell County, in their judgment and discretion also considered that the roads which intersect with the Dixie Highway in the Town of Pelham, one of which leads to Bainbridge and Cairo and the other through Pelham to Branchville and the Flint river, should be paved. In this connection defendants show that the Town of Pelham through which said roads run is the largest marketing place in said county, and that the roads sought to be paved by them which run through said town are called upon to bear more traffic and especially more heavy traffic than any other roads in the county. And in this connection defendants further show that the population of the Town of Pelham is approximately 3500 people, and that the Pelham militia district pays from forty to fifty per cent. of the taxes of the entire County of Mitchell. That in view of these conditions and especially in view of the importance of the roads above mentioned which the defendants, the commissioners, desire to improve from the standpoint of their utility to the entire public of Mitchell County, and especially in view of the further fact that the roads sought to be paved by them are parts of the public-road system of Mitchell County and have at all times heretofore been worked by the authorities of the County of Mitchell with their machines, mules, and labor, said commissioners, in their judgment and discretion, concluded that the improvements sought to be done on said portions of said roads should be done. That at the time of paving the Dixie Highway through the City of Camilla it was concluded by the commissioners that the roads which they now seek to pave through the Town of Pelham were of equal importance and utility to the general public as the roads which run through the City of Ca-

milla; and the question arose as to how much paving would be done upon said roads which run through the Town of Pelham and connect with the Dixie Highway, the city limits of the City of Camilla being one mile each way from the center of the town, while the corporate limits of the Town of Pelham only extended a distance of three quarters of a mile each way from the center of the town. So said commissioners, in recognition of the fact that the roads now sought to be paved which run through the Town of Pelham and connect with the Dixie Highway were of equal importance as highways and of as much utility to the traveling public as was that portion of the Dixie Highway which was paved through the City of Camilla, and for this reason should receive improvement to the same extent as the roads which ran through Camilla received," adopted a resolution accordingly.

At the hearing, after evidence was introduced by both sides, the court granted the injunction prayed, and the defendants excepted.

*J. J. Hill* and *E. M. Davis,* for plaintiffs in error.

*Pope & Bennet,* contra.

PER CURIAM. (After stating the foregoing facts.) The controlling question in this case is, whether or not the county authorities can expend money arising from the sale of bonds like those involved in this case, the proceeds of the sale of which were to be used "for the paving and grading of new and old roads in Mitchell County," for the paving of certain streets in the City of Pelham. The streets in controversy were not a part of State-aid roads, but the plaintiffs in error submitted evidence to show they were parts of the public roads or the public-road system in Mitchell County. The showing upon this question was such that if the county authorities can expend upon the streets of a city the money derived from the source from which these funds arise, it can only be concluded that there was no abuse of discretion upon the part of the county authorities in deciding to pave the streets in question. And if the streets of Pelham, the paving of which was in contemplation, were State-aid roads or a part of State-aid roads, it would seem that there could be no question as to the right of the county to improve the same and expend the county funds in that improvement, under the decision in *Lee County* v. *Smithville,* 154 *Ga.* 550 (115 S. E. 107). Counsel for

the plaintiffs in error cite the case last referred to as sustaining their position, and quote from it the following: "The evident purpose of the legislature was to build paved highways on which the public could travel from county-seat to county-seat, through county-seats to reach other county-seats, and on to the confines of the State. The contrary construction would require the State to build these highways to the limits of a town, which may not pave its streets, then skip to the other side, and begin the work again, leaving unpaved and impassable gaps within the town limits. The contrary interpretation would leave the State without connecting public roads. Continuous highways would be composed of these State roads and municipal streets, the former under State control, and the latter under town management. If the towns and cities can prohibit the State from locating and building public highways within their limits, we see no reason why they could not refuse to permit the State to connect its roads with the streets within their limits; but one would hardly go so far. The truth is that the streets of the towns and cities belong to the State, as do the county public roads."

We do not think, however, that the ruling made in that case is applicable to the precise question which we have before us. The roads in question before the court when that case was decided were State-aid roads; for in another portion of the decision, it was said: "But the legislature can adopt a State system. The State, through its legislature, has as much power and control over the laying out, construction, maintenance, and closing of the highways, streets, lanes, and alleys of municipal corporations as it has over other public highways. It may change, alter, or abolish either class of these highways at will. The power to have opened, worked, repaired, improved, or closed the public highways, streets, and roads may be exercised by the legislature in such manner and way, and under such circumstances, as it may deem best. There is no constitutional or other limitation on this power in this particular matter. *City of Atlanta* v. *Gate City Gas Light Co.,* 71 *Ga.* 107; *Hayden* v. *Atlanta, 70 Ga.* 817. . . It can delegate its exercise to a municipality within its limits. It can withdraw this power at will from the municipality, in whole or in part. In the exercise of this undoubted power, the State has adopted a system of locating and building what are denominated 'State-

aid roads;' and this system is provided for in the above act [Ga. L. 1919, p. 242] by which the State Highway Department was reorganized. In the caption of the act it is declared that it is an act to create a system of State-aid roads and to provide for the designation, maintenance, and improvement of the same; to create and provide for a State-aid road fund, and for the control and management thereof; to provide for the paving of said State-aid roads of the State, or in co-operation with the counties, or with the United States Government, etc. The first section of art. 4 of this act declares 'that there is hereby created a system of State-aid Roads in this State for the purpose of interconnecting the several county-seats of the State, which shall be designated, constructed, improved, and maintained by the State under the State Highway Department, and the provisions of law.'" But in the same decision it was said, after pointing out that prior to the act of 1919, supra, by which the Highway Commission was reorganized, there were two ways of laying out and building public highways in this State, "Under these systems, ordinarily county public roads and municipal streets are not treated as the same; and when provision is made for one, it is not usually construed as including the other. *Board of Commissioners* v. *Americus,* 141 *Ga.* 542 [81 S. E. 435]." Counties of this State have no right to levy a tax for any purpose except those which are mentioned in that part of the constitution which forbids the General Assembly to delegate to any county the right to levy a tax for any purpose except those enumerated. The purposes for which a county may be given the right to levy a tax are as follows: "to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing; to pay the county police, and to provide for necessary sanitation." Civil Code, § 6562. And it is under the provisions of this paragraph in the constitution that the County of Mitchell was authorized to issue bonds, after election duly held, to the amount of $400,000, and these bonds were issued for the purpose of paving and improving "roads" in Mitchell County. And the question is, whether the word "roads" includes the streets in the municipalities in Mitchell County. Ordinarily the word road does not include street, when

used in acts like the one under consideration. The streets of a municipality are controlled by the proper authorities of the municipality, while the roads outside of the city are under the control and management of the county authorities. In the case of *Wood* v. *Shore,* 160 *Ga.* 173 (127 S. E. 145), it was said: "The general rule is that when a municipal corporation is created it becomes vested with jurisdiction over the territory embraced within its corporate limits, and the mere fact that there has been a valuable improvement made by the county authorities on one of the streets of an incorporated city does not oust the municipality of its jurisdiction over such street. The above is true notwithstanding the street improved was, before the incorporation of the city, a part of an established public road of the county." The excerpt quoted is taken from the case of *Almand* v. *Atlanta Con. St. Ry. Co.,* 108 *Ga.* 417 (34 S. E. 6). In *Wood* v. *Shore,* supra, a suit was filed by taxpayers of the county, as in the instant case, alleging that "the defendants are undertaking to appropriate the money of the taxpayers of Banks County for the purpose of grading, digging, preparing, and putting the road or street in condition for travel; that they have no right or authority to spend the money of the taxpayers of the county for such purpose; . . that unless the defendants are restrained and enjoined from using the funds belonging to the public of Banks County in the manner indicated, plaintiffs will be remediless. They pray that the defendants be enjoined from . . spending any of the money of the taxpayers of Banks County for any of the purposes specified in the petition." And in that case it was held that the trial court did not err in granting an injunction against the county authorities to prevent their spending the money for the purpose of working a street in a municipality. In 1 Elliott on Roads and Streets (3d ed.), § 503, it is said: "It is obvious that the officers having control of county affairs can not justly be permitted to control the streets of a city." This was quoted as part of the decision in *Marshall* v. *County of Floyd,* 145 *Ga.* 112 (88 S. E. 943). And it was also said in the case last cited, as was said in the case of *Commissioners* v. *Americus,* supra, that "ordinarily county roads and municipal streets are not treated as the same; and when provision is made for one, it is not usually construed as including the other."

In 13 R. C. L. 17, it is said: "Though it [a street] is a public highway, it is usually specifically denominated by its own proper appellation." The section of our constitution quoted above, limiting the power of county taxation to certain named purposes, should not be enlarged by construction. "The legislature may restrict debts to be incurred, or expenditures to be made by counties, but it can not enlarge the powers of these corporations where such are restricted by the terms of the constitution." *Howard* v. *Early County,* 104 *Ga.* 669 (30 S. E. 880). Numerous decisions emphasize this rule. "While a large discretion in the expenditure of public money is necessarily vested in the officers of the county who have charge of its affairs, such discretion does not extend to the appropriation of public moneys beyond the specified purposes enumerated in the constitution." *Humber* v. *Dixon,* 147 *Ga.* 480 (94 S. E. 565). In the case of *Gulf Paving Co.* v. *Atlanta,* 149 *Ga.* 114 (4) (99 S. E. 374), it was said: "Even if the board of commissioners of roads and revenues for the County of Fulton, in the absence of express authority, could appropriate county money to the City of Atlanta for the purpose of paving streets in that city (*DeVaughn* v. *Booten,* 146 *Ga.* 836 (92 S. E. 629); *Howard* v. *Early County,* 104 *Ga.* 669 (30 S. E. 880); 15 Corpus Juris, 586, 587), the mere 'appropriation' by the county of money for such purpose would not be such a provision by the city for paying the cost of the improvement as would authorize it to incur a liability therefor. See *Tate* v. *City of Elberton,* 136 *Ga.* 301 (4) (71 S. E. 420)." It would seem from the reading of this quotation that it is a strong intimation that it was the opinion of the court that such appropriation as that referred to could not be made; and the intimation becomes stronger when what was there said is considered in connection with the cases cited. And if the county authorities should expend the county funds in paving the streets referred to within the City of Pelham, what assurance have the county authorities that these streets will not be abandoned or discontinued by the city authorities? For in the matter of abandoning the streets or discontinuing them the county authorities would have no voice.

The alternative road law contained in sections 694-704, Political Code, has been adopted in Mitchell County; and the word "road,"

wherever used in those sections, seems clearly to indicate that roads lying outside the municipalities only are included in the term itself. Especially is this true when we consider sections 695 and 696; for the residents of cities are not affected by the provisions of section 695, declaring who shall be subject to road duty, nor are they subject to the payment of the commutation tax provided for in section 696.

It follows from what we have said above that the court did not err in granting the injunction complained of. And in view of the ruling made, it is not necessary to consider the question as to whether the injunction was authorized by the failure to advertise the contract according to the provisions of the statute.

*Judgment affirmed.     All the Justices concur.*