## LEE COUNTY *v.* MAYOR etc. of SMITHVILLE *et al.*

1. The method of laying out and establishing public roads, prescribed by the Civil Code, § 640 et seq., is not exclusive, but cumulative.
2. The county authorities in charge of laying out and constructing public highways can accept lands dedicated by their owners for public roads, and can open and build new public roads therein without complying with the code sections just cited.
3. The act of the legislature, reorganizing the State Highway Department, creates a complete system of State-aid roads, and provides the method for laying out and constructing such roads, under which said department, in conjunction with the county commissioners, or alone, can locate and build such roads without complying with the terms of the above code sections.
4. The chancellor erred in refusing the injunction prayed for by the county, and in granting the injunction asked by the town of Smithville.
   No. 3095. NOVEMBER 23, 1922. REHEARING DENIED DECEMBER 15, 1922.

Injunction.   Before Judge Littlejohn.   Lee superior court.   January 10, 1922.

Lee County, by its board of commissioners of roads and revenues, brought its petition for injunction against the Mayor and Council of Smithville and the town marshal, and made this case.   The board of commissioners determined to change the public highway running from northwest in a southwesterly direction, beginning at Heys' crossing to the Central of Georgia Railway, about two miles south of the town of Smithville, going from Smithville to Leesburg, to a northwesterly direction on the west side of the right of way of said railroad, through the town of Smithville in a northwesterly direction to the county line on the north.   The county is building this new road and making such change in the Dixie Highway by direction of the State Highway Department, and under a contract with the Federal Government.   Said road is to be part of a State-aid road, the same, under the act of the legislature of 1919, being a connecting road between the county seat of Lee County and that of Sumter County.   Neither the Federal Government nor the State Highway Department would furnish Federal or State aid in the construction of the present Dixie Highway, running from the county line on the north to Heys' crossing on the south, because there are two grade crossings over the railroad in that section of the Dixie Highway.   This new road was adopted for the purpose of eliminating said grade crossing.   The County of Lee has graded and constructed practically all of the new road from Heys' crossing into Smithville, considerable work having already been done on said road within the corporate limits of Smithville.   The construction of said road is upon the private property of parties owning land in Smithville, and is not upon any of the streets of said town, except in crossing one street.   The county has the consent of all landowners owning land between where said work is being done and south of the street running west, immediately south of the McAfee Hotel, as well as a large portion of the right of way on the north side of said street and to the north county line.   While the county was engaged in the construction of said road upon the private property, and not upon any of the streets, alleys, or highways of Smithville, the marshal of said town, on the authority of a resolution adopted by the mayor and council, interposed an objection to

the further construction of said road through the town of Smithville; and threatened that, unless the employees of the county discontinued work, all parties so engaged would be arrested by him, and that the county could do no further work in building said highway.

The land, upon which said road was being constructed, at the time its construction was stopped by said town marshal under said resolution, had been dedicated by its owners to the County of Lee for the use of the public as a public highway, which dedication the board of commissioners had accepted. The county did not ask the Mayor and Council of Smithville for leave to build said road upon private property therein, because it did not purpose to interfere with any of the streets, roads, or highways of said town, under its jurisdiction; but it merely proposed to build a new link in the State-aid public highway, connecting the county-seats of Lee and Sumter Counties, which, when accepted by the State Highway Department after its completion, will be under the jurisdiction of said department and maintained by it. The interference of the town marshal under the direction of the mayor and council is illegal. Petitioner has a right to build said highway through Smithville without the consent of its mayor and council; and the threatened arrest of the employees of the county is an unlawful interference with the building of said road, and is greatly hindering petitioner in its construction.

A change in the Dixie Highway and the construction of said new section thereof was mainly to eliminate the danger to people traveling said highway over two grade crossings, which reason, in the judgment of petitioner, justified its board of commissioners, with State and Federal aid, in incurring the expense in constructing this new section. It is the purpose of petitioner to build said new section to the street in said town, running west immediately south of the McAfee Hotel, then passing through said street without interfering in any way with same, starting on the north side of said street and running in a northwesterly direction to the north county line, all of which will be upon private property. Under the law, the board of commissioners are charged with the duty of laying out, opening, building, maintaining, and keeping in repair the public roads of said county; and in building this new road they are in the exercise of their lawful authority, and are not violating the rights of the Mayor and Council of Smithville.

Petitioner prayed for an injunction restraining the defendants from in any way interfering with or hindering the employees of the county in building said section of said highway. This petition was duly verified by an affidavit by one of the board of county commissioners.

Jesse Faust and other taxpayers of Lee County intervened, and alleged that the proposed new road would be much less accessible to property-owners along the present road, and would traverse a territory filled with lagoons and ponds, which would prevent settlements thereon. The new road would deprive residents of the old road of mail service which they are now enjoying. They further set up, that the county had not secured the consent of all the landowners along the new road for its construction; that the County of Lee has no authority to construct and maintain a public road in the incorporate limits of Smithville; that the expenditure of any county money for that purpose would be illegal; that the right of constructing and maintaining any street within the town of Smithville is in its mayor and council; that the County of Lee had not complied with section 640 et seq. of the Civil Code in building said new road; that they appeared before the mayor and city council of Smithville, and asked that they be protected, and that the County of Lee be not allowed to lay out and build said new road, which request had been granted by the mayor and city council, by the passage of a resolution denying the county the right to construct the new road through the town's corporate limits; and that the grand jury for the November term of the superior court, in their general presentments, recommended that said road be not constructed. They prayed to be made parties, and that the county be enjoined from constructing said road. The Mayor and Council of Smithville answered the petition, and admitted the allegations thereof, except as herein stated: Some little work had been done in the incorporate limits by the county in building said road. The new road would occupy between 125 and 150 yards of one of the streets of the town. The board of commissioners had no authority to construct a public road through the incorporate limits of Smithville without its consent. The construction of said highway would not lessen the danger to travelers therein due to railroad operation. While it would not cross the railroad at Heys' crossing, it would cross the tracks of the

" Y " in the railroad yards which connect the railroad's main line running from Albany to Smithville with the line from Smithville to Montgomery, Ala., which is used in shifting cars from one track to the other and for loading and unloading freight. Some thirty trains pass daily over said tracks, besides those shifting. The new road would be otherwise dangerous, for other reasons set up in the answer. The present public highway from Leesburg to Americus runs through the heart of the town. It has been in use for the past fifty years, is in good condition, and is easily kept in repair. Nine persons live on this section of the old road who were served by the government in the delivery of mail. The trains passing Smithville and the shifting of cars on the " Y " obstruct the entrance of the proposed road to the street running east and west, just south of the McAfee Hotel, almost hourly, which will greatly handicap the traveling public. Neither the County of Lee nor the State Highway Department has any authority to construct or maintain a public road within the incorporate limits of the town of Smithville without the consent of its mayor and council. The Dixie Highway runs through the business section of the town. The proposed highway would run some distance therefrom. The Mayor and Council of Smithville have never consented to the construction of this highway. By way of cross-petition the Mayor and Council of Smithville prayed that the County of Lee be enjoined from constructing said new road through the city limits of Smithville.

The plaintiff introduced evidence showing that the proposed public highway was being built by the board of commissioners of Lee County in conjunction with and under the supervision of the State Highway Department, which had selected and approved the route of the proposed road, and would not construct a State-aid road along the present Dixie Highway through Smithville. The defendants introduced evidence tending to establish the allegations set up in the intervention and in its answer. After hearing the evidence the court denied the injunction prayed for by the plaintiff, and granted the injunction asked by the Mayor and Council of Smithville. Error was assigned upon this judgment.

*Robert R. Forrester* and *Robert L. Maynard,* for plaintiff.

*Wallis & Fort* and *Frank A. Hooper & Son,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. The contention that the board of commissioners of roads and revenues of Lee County can establish a public road only by the method provided in the Civil Code (1910), §§ 640 et seq., is not sound. This method is not exclusive, but is cumulative. Where lands are dedicated by their owners for a public road, the county authorities in charge of laying out and constructing public highways can accept such dedications, and open and build a new public road thereon, without complying with the requirements of said sections of the Code. *Penick* v. *County of Morgan,* 131 *Ga.* 385 (62 S. E. 300). It appears that, as far as this work has progressed, this road has been built upon rights of way which had been dedicated by the owners of lands on which it is located. So this situation brings this case within the ruling of the case just cited. But the defendants introduced evidence to show that this highway, when completed, would pass over lands whose owners had not dedicated any portions thereof for this purpose. Under these circumstances the principle referred to above would not apply. In view of this fact, would the county commissioners have to pursue the method of laying out and building public roads laid down in the code sections just cited? If they were laying out a county public road, in their capacity of county commissioners, they would have to track this law. If it became necessary to condemn a right of way for a public road, which they as such commissioners are authorized to build, they would have to follow the scheme pointed out in the code sections cited. *Mitchell County* v. *Hudspeth,* 151 *Ga.* 767 (108 S. E. 305); *Commissioners of Decatur County* v. *Curry,* 154 *Ga.* 378 (114 S. E. 341).

Prior to the act of 1919 (Ga. Laws 1919, pp. 242 et seq.), by which the State Highway Commission was reorganized, there were two ways of laying out and building public highways in this State. One was the county method, which is defined in the Civil Code, §§ 640 et seq. The other was the municipal method, whereby towns and cities were given in their charters jurisdiction over the laying out, building, changing, closing, and working streets within their limits. In pursuance of the latter method, the charter of Smithville gives to its mayor and council " full and complete control of the streets, alleys, sidewalks, and squares of the city, with power to open, lay out, widen, straighten, or otherwise change such streets." Ga Laws 1901, p. 633. Under these sys-

tems, ordinarily county public roads and municipal streets are not treated as the same; and when provision is made for one, it is not usually construed as including the other. *Board of Commissioners* v. *Americus,* 141 *Ga.* 542, 550 (81 S. E. 435). So when a municipal corporation is created, it becomes vested with jurisdiction over the highways within its limits. *Almand* v. *Atlanta Consolidated St. Ry. Co.,* 108 *Ga.* 417 (34 S. E. 6); *Commissioners of Polk County* v. *Cedartown,* 110 *Ga.* 824 (36 S. E. 50); *Board of Commissioners* v. *Americus,* supra; *Marshall* v. *Floyd County,* 145 *Ga.* 112, 119 (88 S. E. 943).

But the legislature can adopt a State system. The State, through its legislature, has as much power and control over the laying out, construction, maintenance, and closing of the highways, streets, lanes and alleys of municipal corporations as it has over other public highways. It may change, alter, or abolish either class of these highways at will. The power to have opened, worked, repaired, improved, or closed the public highways, streets, and roads may be exercised by the legislature in such manner and way, and under such circumstances, as it may deem best. There is no constitutional or other limitation on this power in this particular matter. *City of Atlanta* v. *Gate City Gas Light Co.,* 71 *Ga.* 107; *Hayden* v. *Atlanta,* 70 *Ga.* 817. The legislature can, of course, delegate this power to local, inferior bodies (37 Cyc. 51), or it can exercise it through its own agencies. It is the duty of the State to lay out public highways and improve them in cities as well as in unincorporated country districts. *State* v. *Atkin,* 64 Kan. 174 (67 Pac. 519, 97 Am. St. R. 343), affirmed, 191 U. S. 207 (24 Sup. Ct. 124, 48 L. ed. 148); 13 R. C. L. 79. It may exercise this power directly, or may delegate it to municipalities, the counties of the State, or to any other constituted body. *Byars* v. *State,.* 2 Okla. Cr. 481 (102 Pac. 804, Ann. Cas. 1912A, 765). The whole subject is under the control of the State in its sovereign capacity, and this power is to be exercised through its legislature. 13 R. C. L. 79. It can delegate its exercise to a municipality within its limits. It can withdraw this power at will from the municipality, in whole or in part. In the exercise of this undoubted power, the State has adopted a system of locating and building what are denominated " State-aid Roads;" and this system is provided for in the above act by which the State Highway Depart-

ment was reorganized. In the caption of the act it is declared that it is an act to create a system of State-aid roads and to provide for the designation, maintenance, and improvement of the same; to create and provide for a State-aid road-fund, and for the control and management thereof; to provide for the paving of said State-aid roads of the State, or in co-operation with the counties, or with the United States Government, etc. The first section of art. 4 of this act declares " that there is hereby created a system of State-aid Roads in this State for the purpose of interconnecting the several county seats of the State, which shall be designated, constructed, improved, and maintained by the State under the State Highway Department, and the provisions of law." By section 1 of art. 5 of this act, the power and duties of the State Highway Department are defined as follows: " To have charge and control of all road or highway work designated or provided for or done by the State or upon State-aid Roads; to designate, improve, supervise, construct, and maintain a system of State-aid Roads, provided that no road shall become a part of said system until the same shall be so designated by the State Highway Board by written notice to county road authorities concerned; . . to provide for surveys, maps, specifications, and other things necessary in designating, supervising, locating, improving, constructing or maintaining said State-aid Roads, or such other public roads as may be provided under this act." By section 2 of art. 5 of this act it is provided that " the Governor shall appoint the State Highway Board, who shall at once proceed to designate the system of interconnecting county-seat public roads to be known as State-aid Roads." These roads shall embrace two roads starting from the county seat of each county, which shall connect with the designated State-aid roads of the adjoining county or counties. The State Highway Board may designate additional main and traffic roads, when necessary to complete the interconnecting system, where unusual topographical conditions are met with, or to serve important market points, where the county-seat to county-seat routes involve substantial loss of distances. Paragraph 5 of section 2 of this article provides " that when any portion of the designated State-aid road system is taken under the jurisdiction of the State Highway Department by written notice as prescribed in article 5, section 1, hereof, the county or counties in which

said portion is located shall not thereafter be required to levy taxes for the construction or maintenance of said portion, or to use any of its funds or road forces in the construction or maintenance thereof." Section 5 of said article declares " that the State Highway Board shall have authority to plan and to construct, improve and maintain said State-aid Roads in any manner they may deem expedient, by free labor, by contracts, or by any other method or combination of methods, in their discretion. In so doing said Highway Board is hereby authorized and empowered to condemn and acquire a right of way not exceeding 100 feet in width for maintaining, improving and constructing said State-aid Roads."

By this act, some of the provisions of which are set out above, the legislature has created a State system for the location, building, and maintenance of public highways connecting the county seats of this State. This makes a new and third system for the building of public highways in this State. The method of their location, construction, and maintenance is fully provided for. It may be said that under section 6 of article 5 of this act, the respective county road authorities are to furnish free to the State Highway Board all necessary rights of way for the designated roads in each county constituting a part of the system of State-aid roads; and that this would require the county commissioners to pursue first the method provided for in the Civil Code, § 640 et seq. We do not believe that this suggestion is good. These provisions of the code provide a method for determining the necessity for, and of establishing, public roads in the county. The highway act declares the existing necessity of public roads interconnecting the various county seats of this State. It declares how they shall be designated, located, and built. The machinery for establishing public roads in the counties of this State is entirely different from the method provided for the location and construction of these State-aid roads. For this reason, the county method plan does not apply to the State method of designating or locating and building State-aid roads. This provision of the statute, requiring the proper road authorities to furnish free rights of way to the State Highway Department simply puts upon the counties the burden of acquiring and furnishing these rights of way. The legislature has power to establish a State road, and tax the cost and expense thereof upon the county, without the approval of the people of the county.

State v. Commissioners, 28 Kan. 431. If the State can put the whole cost of public roads upon the county, it can put upon the county the cost of rights of way for them. These county authorities will have to secure these rights of way as donations, or pay for the same when condemned by the State Highway Department, as provided in section 3 of article 6 of this statute. Thus, we are of the opinion that the provisions of the Civil Code, § 640 et. seq., are not applicable to the location and construction of these State-aid roads. It is insisted by counsel for the defendants, that the act reorganizing the Highway Department of the State does not give to that department this power. The reasoning is, that this statute only gives to that department power to build roads connecting county-seats, that the term, " county-seat," does not mean the lot or spot on which the county buildings are built, but the territory embraced within the town where the county seat is located, that you can build these State roads from the incorporate limits of one county-seat town to the incorporate limits of another county-seat town, and thus connect the county-seats, without appropriating their streets or building public roads within their limits; and that, in consequence of this fact and of the theory that one system is generally held not to encroach upon another system, the legislature has not granted to this department the power to build public roads within county-seat towns. The obvious reply to this argument is, that we are not dealing with a county-seat town, but with the town of Smithville, which does not belong to that class. It is not a reasonable construction of this statute to hold that the State, in building these highways, must surround every incorporated hamlet, village, town or city which may be on the lines on which they are projected. This might render the location of these roads circuitous, expensive, and, in some cases, impossible.

If we were dealing with county-seat towns, we do not think that the construction which we are asked to place upon this act is the right one. The purpose which the legislature had in view in this legislation was to provide well-located, well-constructed, well-paved and well-maintained highways between county-seats, which should connect, and permit uninterrupted travel between all of them in the State. As the Supreme Court of Kansas has said, " it is of interest to the general public that the roads which

lead from one county to another, and into and through every township and county in the State, should be kept free from impediments to travel, so that communication may be open and convenient from one end of the State to the other." State *v.* Irrigation Co., 63 Kan. 394 (65 Pac. 681).

The evident purpose of the legislature was to build paved highways on which the public could travel from county-seat to county-seat, through county-seats to reach other county-seats, and on to the confines of the State. The contrary construction would require the State to build these highways to the limits of a town, which may not pave its streets, then skip to the other side, and begin the work again, leaving unpaved and impassable gaps within the town limits. The contrary interpretation would leave the State without connecting public roads. Continuous highways would be composed of these State roads and municipal streets, the former under State control, and the latter under town management. If the towns and cities can prohibit the State from locating and building public highways within their limits, we see no reason why they could not refuse to permit the State to connect its roads with the streets within their limits; but one would hardly go so far. The truth is, that the streets of the towns and cities belong to the State as do the county public roads. The legislature has given to the municipalities temporary control over the streets within their borders, which it can wholly withdraw or modify at will. So we reach the conclusion, that the State Highway Department, co-operating with the county commissioners of Lee County, can build this public road through the town of Smithville without its consent and against its will.

We are of the opinion, that the trial judge erred in refusing the injunction prayed for by the county, and in granting the injunction asked by the Mayor and Council of Smithville.

*Judgment reversed. All the Justices concur.*