---

FAVER *et al.* v. MAYOR &c. OF WASHINGTON *et al.*

1. The creation of the relation of principal and agent between a city and a county by which the former authorizes the latter to contract in behalf of the city for the paving of its streets, which are to constitute links in an interconnecting county-seat highway which the State Highway Department and the county propose to construct, is not such a contract as is required to be in writing and spread upon the minutes of the board of county commissioners of such county. This is especially so when such appointment is made by resolution of the mayor and council of the city, which is spread upon the minutes thereof, and where the

contract between the county and the contractor for such paving is in writing and entered upon the minutes of the board of county commissioners.

2. Where the charter of a municipality authorizes the pavement of streets and the levy of assessments against abutting property to pay therefor, and provides that owners of such property may file an affidavit of illegality and contest the whole or any part of the amount so claimed, the levy of such assessments is not void on the ground that the owners are denied due process of law.

3. Under the allegations of the petition as amended, the city did not create a debt in providing for the payment of the cost of paving the streets in question, in violation of article 7, section 7, paragraph 1, of the constitution of this State, which prohibits municipalities from creating debts without the sanction of a popular vote.

4. The assessment was not void because it included the pavement of the intersections of cross-streets not abutting on the property of the individuals whose property was assessed; nor was such assessment void because it embraced the cost of pavement of certain streets fronting on property of the city.

5. The provision in paragraph 5 of section 2 of article 5 of the act of August 18, 1919, reorganizing the State Highway Department, is a limitation upon the power of counties to levy taxes for the construction and maintenance of State-aid highways, and is not a limitation upon the power of the city to provide for the pavement of its streets under the arrangement made between the city and the county in this case.

6. The fact that under section 7 of article 5 of the above act provision is made for reimbursing counties for money expended in the construction of State-aid roads, and the further fact that the State Highway Department has issued certificates to the county for the full cost of paving these streets of the city, does not prevent the enforcement of the assessment against abutting-property owners to pay their proportion of such cost, it not being alleged and shown that the county had been paid for the cost of such improvements. Whether, upon the payment of such certificates, the owners of abutting property and the city would be entitled to such funds is not now for decision by this court.

7. The attacks upon the constitutionality of the act of the General Assembly creating the State Highway Department are without merit.

8. Applying the above rulings, the court did not err in sustaining the general demurrer and in dismissing the petition.

No. 4232. JANUARY 16, 1925.

Equitable petition. Before Judge Shurley. Wilkes superior court. February 8, 1924.

This case was here before. *Mayor &c. of Washington* v. *Faver*, 155 *Ga.* 680 (117 S. E. 653). The facts up to that time are fully set out in the report cited. Before the remittitur was made the judgment of the court below, the plaintiffs amended their petition and made the following allegations: Under section 13 of the charter of the City of Washington (Ga. Laws 1894, p. 187) the

Mayor and Council of Washington are authorized to levy and collect a tax for general purposes, not to exceed 25 cents on every $100 of the assessed value of property for taxation in said city. During the year 1919, at the time said alleged contract was entered into, the mayor and council had no fund in their treasury which might be applied to the payment of any part of the cost of said pavement. The total value of the property returned for taxation in that year in said city amounted to $2,971,380, and the total sum which the mayor and council were authorized by said charter to levy for general purposes would produce $7428.45. Out of said sum the mayor and council were required to pay, and did pay, the following charges: General expenses $1892.52, salaries of officers $5425.05, street wages $4472.88, street maintenance $4104.53, cemetery expenses $352.44, mule feed $1645.75, interest $712.06, making a total of $18,605.23. By reason of said payments and said limitation on the taxing power of the mayor and council, there was no fund in their treasury, nor could they during said year levy any tax for the purpose of paying any portion of the cost of said pavement. On East Main Street, where said paving was laid, Pecan Street crosses Main Street and Walnut Street, Oak Street and Pine Street intersect East Main Street, each of said streets being 50 feet wide. The portion of paving chargeable directly to the city, extending entirely across the paving 50 feet wide at the crossing of Pecan Street, and one half of said paving opposite the intersection of each of said streets is for the distance of 250 feet. First, Second, and Third Streets intersect Alexander Avenue. Each of said streets is 50 feet wide. The portion of said paving to be paved by the city is for the distance of 180 feet. This makes the total distance of 430 feet, the cost of which at the price levied and assessed for said paving amounting to $610.60. In addition to which payments the city, as the owner of the public-school grounds, is required out of its general funds to pay an assessment equal to $528.90, making a total of $1138.50 necessary to be paid by the mayor and council from the general funds. By reason of these facts, the making of said contract was the creation of a debt by the city without submitting the same to the qualified voters thereof.

The alleged contract between the city and the County of Wilkes was verbal, was not in writing, was not signed by any officer, agent, or other person authorized to represent the city, and was

not entered on the minutes of the commissioners of roads and revenues of Wilkes County, as required by law; for which reason said contract is illegal and void.

Under section 7 of article 5, and by virtue of article 6, of the act of August 18, 1919, reorganizing the State Highway Department (Acts 1919, pp. 242-253), said State Highway Department was authorized and required, upon the completion of the construction of certain State highway system roads, to repay to each of the counties which had furnished money by an issue of bonds or otherwise, for the construction of any of said roads, the entire sum paid by said county for the construction of such roads. In pursuance of such statute said State Highway Department, on December 30, 1922, did, by virtue of its certificate No. 10, approve and direct to be paid to the County of Wilkes the entire sum paid by said county for the construction of the road known as the Atlanta-Augusta Highway, between a point at the forks of the Augusta and Lincolnton road on the east and a point one mile west of the city limits of Washington, which said description includes the paving on East Main Street, assessments for the paving of which have been levied against petitioners. The sum to be so paid amounts to $30,507.99. On December 30, 1922, by certificate No. 11, the State Highway Department agreed and undertook to repay to the County of Wilkes the entire cost paid by said county for the laying of the pavement on Alexander Avenue, amounting to $7265.36, and the State Highway Department having been authorized and required by said statute to repay the County of Wilkes the entire sum expended by said county for the construction of said road, for the paving of which the assessments levied against petitioners were to pay. Said provision for the reimbursement of the County of Wilkes from the funds of the State Highway Department for all sums paid by the county in making said pavement provides a means of paying therefor which excludes the idea that any assessment should be levied against petitioners for that purpose. For this reason the assessment against the property of petitioners is illegal and void.

The State Highway Department having undertaken to reimburse the County of Wilkes for said entire sum, the levy of assessments against petitioners for the purpose of paying the cost of said pavement is subjecting them to double taxation, and is the taking of their property for public purposes without compensa-

tion, and is therefore contrary to paragraph 1 of section 3 of article
1 of the constitution of Georgia, and is the taking of the property
of petitioners without due process of law, in contravention of
articles 5 and 14 of the amendments to the constitution of the
United States.

At the time of making the alleged contract between the County
of Wilkes and the City of Washington, the State Highway De-
partment had accepted, taken charge of, and designated-as a por-
tion of the system of State-aid roads the several portions of the
streets of the City of Washington, including the area sought to be
paved and for the pavement of which said assessments against peti-
tioners were levied, and said streets were at that time a portion of
said system of State-aid roads, and said streets remained, until said
assessments were actually levied, and are now a portion of said sys-
tem of State-aid roads; and under provision 5 of section 2 of article
5 of the act of August 18, 1919, no county or counties or municipal
corporation, within the limits of which any State-aid road is located,
can levy any tax for the purpose of constructing such road or
paving of the same; and by reason of such provision said pretended
levy of assessment against petitioners was illegal and void.

To the petition as amended the defendants renewed their de-
murrer, which was sustained by the court; and to this judgment the
petitioners excepted.

*William Wynne* and *W. A. Slaton,* for plaintiffs.

*Irvin & Fortson, C. E. Sutton,* and *Colley & Colley,* for de-
fendants.

HINES, J. (After stating the foregoing facts.)   When this case
was here before this court held that the petition failed to set forth
a cause of action, and that the court erred in overruling the de-
murrer.   Before the remittitur from this court was made the judg-
ment of the court below, the plaintiffs amended their petition by
new and additional attacks upon the validity of the assessment
against property abutting upon the streets paved to defray the
expenses of paving.   To the petition as amended the defendants
renewed their demurrer, which the court sustained; and to this
judgment the plaintiffs excepted.

1.   The plaintiffs attack the validity of the assessment, because
the contract between the city and the county for paving these streets
was illegal and invalid.   The alleged invalidity of this contract is

based upon the ground that all contracts entered into by the ordinary or county commissioners, as the case may be, with other persons in behalf of the county, must be in writing and entered on their minutes . (Civil Code of 1910, § 386) ; and that such contracts, unless so in writing and so entered on the minutes, are incapable of enforcement by those with whom they are made. *Weathers* v. *Easterling,* 153 *Ga.* 601 (2) (113 S. E. 152). It is likewise true that a contract between a county and a contractor for the construction or improvement of a State-aid public highway must be in writing and entered upon the minutes of the board of county commissioners, before the same can be enforced by the contractor. *Board of Commissioners* v. *MacDougald Construction Co.,* 157 *Ga.* 595 (122 S. E. 317). For the purposes of this case we may concede, without deciding, that a contract fully performed by the other party, where the full fruits of the contract have been received and retained by the county, can not be enforced against the county. So in this case, if the contract between the city and county was one in behalf of the county, it must be in writing and spread on the minutes of the county commissioners, before it would be enforceable. In deciding whether the contract was made in behalf of the county, we must keep clearly in mind the nature of the arrangement between the city and county. The State Highway Department and the county were desirous of constructing or improving interconnecting county-seat roads. The City of Washington was desirous of having portions of the streets in question paved. The city was unable to obtain Federal aid for the paving of its streets. The State Highway Department and the county could and did procure such. In this situation the city appointed the county its agent to contract for the paving of portions of these streets. The creation of this agency was made by a written resolution of the mayor and council of the city; duly passed and spread upon the minutes of the city council. So the contract creating the agency was in writing. But if it had rested only in parol, it was made in behalf of the city and not of the county. So we are of the opinion that the appointment by the city of the county as its agent to contract for the paving of a portion of its streets, under a common arrangement between the State Highway Department, the county, and the city for the construction of interconnecting county-seat highways, of which such streets were links, was not a contract

in behalf of the county, but one in favor of the city, by which the city reaped the benefits of Federal aid, and thus lessened the burden of taxes its citizens would have to bear to secure the pavement of these streets. This being so, we do not think that the contract was such a one in behalf of the county as was required to be in writing and spread upon the minutes of the county commissioners, as required by this section of the code. It is not amiss to say that the contract between the county and contractor was in writing and spread on the minutes of the board. While this contract was not made by the county expressly in the name of the city, it was executed and performed under the above common arrangement. So the contract between the city and the county was not invalid because not in writing and spread on the minutes of the county commissioners, and the assessment of property abutting on these streets to pay a portion of the cost of paving them was not invalid because based upon an illegal contract.

2. Where the charter of a municipality authorizes the paving of streets and the collection of assessments against abutting-property owners, and provides that such property owners may file an affidavit of illegality and may contest the whole or any part of the amount so claimed, levy of the assessment is not void on the ground that the owner is not afforded due process of law. *Sanders v. Gainesville,* 141 *Ga.* 441 (2) (81 S. E. 215); *Horkan* v. *Moultrie,* 154 *Ga.* 444 (2) (114 S. E. 888).

3. Another attack upon the validity of the assessment against abutting property is that the contract, by which the city entered into the above arrangement with the State Highway Department and the county, created a debt by the city, in violation of article 7, section 7, paragraph 1, of the constitution of this State, which prohibits municipalities from creating debts without the sanction of a popular vote. When this case was here before, we held that the allegations of the petition did not show the creation of such a debt. By an amendment to their petition, made after the above ruling, plaintiffs alleged that the City of Washington, under its charter, is only authorized to levy and collect a tax for general purposes, not exceeding 25 cents on every $100 of taxable property in said city; that the total property returned for taxation for the year 1919 therein amounted to $2,971,380; that the total sum the city was authorized to levy for town purposes, under said limitation in its

charter, on the taxable property within its limits was only $7,-438.45; that out of said sum the city was required to pay and did pay sums amounting to $18,605.23 for general purposes, by reason of which there were no funds in its treasury, and the city could not, during said year, levy any tax for the purpose of paying the cost of said paving; and that in consequence of these facts the arrangement under which these streets were paved amounted to the creation of a debt in violation of said constitutional provision. Under the resolution of the mayor and council of this city, providing for the paving of these streets, the city appropriated $25,000 for this purpose, to be raised by levy of assessments upon the property abutting on such streets, and further provided that any balance of the cost which could not be paid from funds derived from said assessments should be paid out of the general funds of the city. Under these additional allegations, taken in connection with those of the original petition, the plaintiffs failed to show that the city created any debt for these improvements, in violation of the above constitutional provision, it not being alleged that in pursuance of said resolution the city made any contract for the paving of said streets, by which it would be required to pay out of its general funds any portion of the cost of the improvements, and there being no allegation that the assessments were not sufficient to pay that portion of the cost properly chargeable to abutting-property owners, and that the funds derived from the State Highway Department and Federal aid under the above arrangement were not sufficient to pay the city's proportion of the entire cost of paving these streets. The absence of an allegation, in the petition as amended, that there existed such balance negatives its existence; and we can not assume that the assessments were not sufficient to meet the sum appropriated by the city to pave these streets. So we are of the opinion that the plaintiffs failed to show the creation of any debt by the city in violation of the above constitutional provision. The burden to do this rested upon them; and they failed to carry this burden.

4. Another attack on the legality of the paving assessments is based on the ground that the assessments against abutting-property owners included the intersection of cross-streets not abutting on the property of the individuals assessed. Under the decision in *Kaplan* v. *City of Macon,* 144 *Ga.* 97 (86 S. E. 219), the assess-

ment was not illegal on this ground. The request to review and overrule that decision is denied.

5. Paragraph 5 of section 2 of article 5 of the act of August 18, 1919, reorganizing the State Highway Department (Ga. Laws 1919, pp. 242, 249), provides: "That when any portion of the designated State-aid road system is taken under the jurisdiction of the State Highway Department by written notice as prescribed in article 5, section 1, hereof, the county or counties in which said portion is located shall not thereafter be required to levy taxes for the construction or maintenance thereof." This provision is a limitation upon the power of the county to levy taxes for the construction and maintenance of State-aid highways, but is not a limitation on the power of a city to provide for the pavement of its streets under such an arrangement as was made in this case. Whether a city would be liable for the maintenance of its streets which are made a part of State-aid roads is not now for decision by this court.

6. Under section 7 of article 5 of the above act, reorganizing the State Highway Department, provision is made for reimbursing counties for money expended in the construction of State-aid roads. This act does not make provision for the payment of moneys expended by a city for paving its streets, nor for the payment of assessments levied by the city for such purpose when such moneys are expended and such assessments are levied in pursuance of an arrangement by which the city is to secure the pavement of its streets free of all cost, except such portion thereof as can be assessed against the lands of individuals abutting on said streets, or from funds otherwise lawfully applicable for such purpose, notwithstanding the fact that such streets are links in State-aid roads. Plaintiffs allege that certificates have been issued to the County of Wilkes which are sufficient to pay the entire cost of paving these streets, and that this act provides a complete method for the payment of these costs. There is no allegation in the petition that these costs have been paid in full by the State Highway Department to the county. If these certificates had been paid to the county and the entire cost of paving these streets had thus been liquidated, a different question would be presented for adjudication. Whether the city and the plaintiffs would be entitled to the proceeds of these certificates when they are paid is not now a question for determina-

tion by this court. Such provision for the reimbursement of
counties for funds expended in the construction of such highway.,
and the mere issuance of certificates by the State Highway Depart-
ment, which show that the county is entitled to funds sufficient
to pay the entire cost of the pavement of these streets, in the absence
of an allegation that the certificates themselves have been paid, do
not render illegal the assessments levied against lands abutting on
these streets to meet the portion of the cost of paving which the
city was authorized in its charter to assess against abutting prop-
erty. It may be that if these certificates are paid, the city and the
owners of abutting property on these streets would be entitled to
such funds; but this question is not now before us for decision.

7. ·Other allegations of the petition attack the constitutionality
of the act of the General Assembly creating the Highway Commis-
sion, wherein authority was granted to said board to lend its credit
to the political subdivisions of the State for the building of State
highways, it being contended that these provisions are in conflict
with article 7, section 8, paragraph 1, of the constitution of Georgia
(Civil Code (1910), § 6565), providing: "The State shall not
assume the debt, nor any part thereof, of any county, municipal
corporation, or political division of the State, unless such debt
shall be contracted to enable the State to repel invasion, suppress
insurrection, or defend itself in time of war." This contention is
without merit.

8. It follows from the foregoing rulings that the court did not
err in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed. All the Justices concur, except Beck, P. J.,
disqualified, and Hill and Gilbert, JJ., dissenting.*

GILBERT, J. I dissent for the following reasons:

1. The board of commissioners of roads and revenues takes the
place of the ordinary, in so far as this case is concerned, in the
discharge of the financial affairs of the County of Wilkes. *Weath-
ers* v. *Easterling,* 153 *Ga.* 601, 603 (supra).

2. "All contracts entered into by the ordinary [or board of
county commissioners, as the case may be] with other persons in
behalf of the county must be in writing and entered on the
minutes." Civil Code (1910), § 386.

3. A person can not enforce ·a contract made with a county,
by suit or otherwise, unless such contract is entered on the minutes

of the proper county authority executing the contract on the part of the county. *Milburn* v. *Glynn County,* 109 *Ga.* 473 (34 S. E. 848) ; *Weathers* v. *Easterling,* supra.

4. Where a contract is let by a municipality for the construction of a public improvement such as the paving of its streets, and an assessment is levied to pay such contract price, the validity of such contract is essential to the validity of the assessment, since otherwise the assessment would be levied to pay a claim not legally due against the city. *Sanders* v. *Gainesville,* 141 *Ga.* 442 (1 *a*) (supra).

5. Since there is no contract enforceable against the city for the construction of street-paving as alleged in the petition, because the purported contract was not in writing and not recorded on the minutes of the board of county commissioners, the assessment was not enforceable as against plaintiffs, abutting-property owners; and the court erred in sustaining a demurrer to the petition as amended.

6. Even though the invalid contract between the municipality and the county has been fully executed by the completion of the pavement, this does not render the assessment valid. There must be a valid and enforceable contract between the municipality and some other contracting party for the laying of the public improvement, before the assessment can be enforced. To hold otherwise would be a solemn adjudication that public servants might ignore the law governing their official actions, and, after executing the terms of their invalid agreement, that the citizen and taxpayer is rendered helpless as against their demands for the payment of money to carry out illegal and invalid obligations.

7. No estoppel against the plaintiffs can arise on account of the fact that the pavement was completed before the filing of the petition for injunction. Knowledge on the part of plaintiffs that the work of paving was being done by the County of Wilkes could not operate as notice that the municipality of Washington intended to assess abutting-property owners to pay for the same; and inspection of the minutes of the municipality would merely have disclosed the passage of a resolution authorizing two of the members of council to enter into a contract with the County of Wilkes, without disclosing any of the terms of said contract. Inspecting the minutes of the board of commissioners of Wilkes County, and finding no contract with the City of Washington of record in these

minutes, the plaintiffs would have been authorized to conclude that no contract between the county and the municipality had been entered into. Observing the employees of the County of Wilkes actually constructing the paving, which was a part of a continuous highway running through the city, was not notice to the plaintiffs that the city was assuming an obligation to pay for the paving and that abutting-property owners would be assessed for the purpose of payment to the city. *Sanders* v. *Gainesville,* supra.

8. When the case was previously here it was held that a contract between a county and a city was not illegal and void on the ground, as then contended, that such contract was "a delegation of legislative authority of the city to the county, the State Highway Department, and the Federal government, no such delegation of legislative and official discretion appearing from said resolution and contract." *Mayor &c. of Washington* v. *Faver,* 155 *Ga.* 680 (4) (supra). The court did not rule that the contract was valid as against any attack not then made and dealt with in the case.

9. Under authority of *Sanders* v. *Gainesville,* supra, the petitioners were entitled to the remedy by injunction.

10. The United States and the State, being sovereigns, have inherent power to contract; but that attribute can not strictly be said to exist in the political subdivisions of the State. Counties in Georgia possess no power to contract, other than that conferred by the sovereign State. *Decatur County* v. *Roberts,* 159 *Ga.* 528 (126 S. E. 460). Whoever deals with the officers of a county is bound at his peril to take notice of the limitations upon the power and authority; for they can only bind the public which they represent within the limits of their authority. "Where the law requires a public contract to be in writing the provisions of the law are mandatory, can not be waived, and are in most instances in the nature of conditions precedent to the exercise by public bodies of the power to contract. They [the courts] therefore hold these provisions of law applicable alike to contracts executed as well as executory. Accordingly, since the manner of making public contracts is thus limited, where it is not followed the contract attempted to be made is illegal, and no recovery may be had thereon even though there has been full performance and the public body has received and retained the benefits. Nor will recovery of reasonable value be permitted." Donnelly on Public Contracts, § 138; *Murphy* v.

Louisville, 9 Bush. (Ky.), 189; Boston Electric Co. v. Cambridge, 163 Mass. 64 (39 N. E. 787); McBrian v. Grand Rapids, 56 Mich. 95 (22 N. W. 206); Schumm v. Seymour, 24 N. J. Eq. 143; McDonald v. Mayor, 68 N. Y. 23 (23 Am. R. 144); Dickinson v. Poughkeepsie, 75 N. Y. 65; Smart v. Philadelphia, 205 Pa. 329 (54 Atl. 1025); McManus v. Philadelphia, 201 Pa. 619 (51 Atl. 322); Watterson v. Nashville, 106 Tenn. 410 (61 S. W. 782); Starkey v. Minneapolis, 19 Minn. 203; Arnott v. Spokane, 6 Wash. 442 (33 Pac. 1063). It should be observed that the Civil Code, § 386, declares that "All contracts entered into by the ordinary with other persons in behalf of the county must be in writing and entered on their minutes." Since the mandate of the law in this respect applies to "all contracts," it would seem to be impossible to eliminate some contracts from the operation of the statute. "Public policy requires such restrictive enactments to be rigidly enforced, and the consequences resulting from the void character of the contracts they prohibit must be the same in equity as at law." Schumm v. Seymour, 24 N. J. Eq. 143 (8).

The majority of the court, in the first headnote, hold that the contract between the municipality and the county "is not such a contract as is required to be in writing and spread upon the minutes of the board of county commissioners of said county." This conclusion appears to me to be unsound, for several reasons. In the case of *Board of Commissioners of Morgan County* v. *MacDougald Co.,* 157 *Ga.* 595 (supra), it was held that a contract between a county and a paving contractor for the paving of a State-aid road was such a contract as the statute required to be in writing and entered on the minutes of the proper county authorities. If there was a contract between the municipality and the county, what was its object? It can not be questioned that the county and the municipality had in contemplation only one thing, and that was the paving of a street which was to connect a State-aid road and make it continuous. The moment we say that the expression in the statute that "all contracts" does not mean *all* contracts, but that on the contrary some contracts do not fall within the statute, we enter upon dangerous ground. Such construction destroys almost altogether the protection which the lawmaking power intended to afford the taxpayer. It leaves open, as a matter of construction, each instance where a contract is entered into by the county, to be

determined by the facts and circumstances as they can be made to appear at the time. Another objection of perhaps equal importance is that the construction amounts to a ruling that a county may become an agent for a municipality. This construction appears obviously unsound. No such power is given to county authorities under the constitution and laws of this State. No instance has been pointed out under which such an undertaking has been approved by the courts. So far as appears, this is the first instance in which a Georgia county has undertaken to act as the agent of a municipality in any kind of an undertaking. It is significant that in the first instance the undertaking partakes of a dubious character. The undertaking, when analyzed, partakes more or less of a fraud on the United States Government. The Federal Government appropriates funds to be apportioned to the States and expended by and under the direction of the State Highway Commission in the construction of public highways of a designated character. The State Highway Commission can obtain these funds only by obligating itself to see that they are expended according to the laws of the State and of the Federal Government. Such Federal funds are not intended for the use of a municipality, and can not be obtained directly by municipalities. This fact is conceded in the majority opinion, and is offered as an explanation of the necessity of the county becoming an agency of the municipality. In other words, it is explained that, because of the fact that the municipality can not lawfully obtain Federal funds for the paving of its streets, it became necessary for the municipality to constitute the county as its agency, and as such agent the county was to undertake to procure such funds in its own name but to be expended for the benefit of the city on the streets of the city. It follows, if the county was merely the agent of the city in obtaining Federal funds, that the funds were not obtained for the benefit of the county.

The writer can not escape the conclusion that the transaction was more than a mere indirect method of doing a lawful thing, but that it partook more of the nature of a legal fraud. Under such circumstances it would seem deplorable for this court to condone and approve the transaction. The majority hold that the appointment of the county by the city as its agent was made by resolution, which was spread upon the minutes of the mayor and council;

and therefore the conclusion is reached that "the contract creating the agency is in writing." This position also seems untenable. A resolution was adopted by the mayor and council, but it went no further than to empower two of the members of council to enter into a contract with the county. This is far different in effect from a resolution creating an agency on the part of the county to act for the municipality, even if the county could act as such agent. The majority also say, "But if it had rested only in parol, it was made in behalf of the city and not of the county." In point of fact it is clear from the record that the county was seeking to complete an intercounty road through the City of Washington, and the arrangement was made as much in behalf of the county as it was in behalf of the city. The county was to obtain a completely connected intercounty highway and the city was deriving the benefit therefrom of Federal funds to be used in part payment for paving the city street. The majority also say that "the contract between the county and the contractor was in writing and spread upon the minutes of the board." This fact, however, can not lend any element of legality to the transaction between the county and the municipality. The law requires that the municipality must be bound by a legal and enforceable contract binding the city itself to pay for the pavement, before it can assess abutting property owners for repayment. The city had no such contract. It had merely by resolution appointed two of its members to contract with the county. According to the record in the case, these members of the council entered into an oral contract with the county to actually pave the street. The county made a contract with the paving company, which was in writing, entered upon its minutes. The latter contract had no binding effect with respect to the municipality, and could not be enforced against the municipality. According to the record one or the other horn of the dilemma must be accepted, either one of which is fatal to the case. Either, under the terms of the transaction between the county and the municipality, the county took over that portion of the municipal street which was paved and made it a part of the intercounty highway and thus assumed all of the expense of paving and maintenance, to the exclusion of the city, or the county was a mere means or agency by which the city indirectly obtained Federal funds, to which it was not entitled under the law. If the first is the proper construction of the trans-

action, then the city owed nothing for the paving, since the duty to pave rested wholly upon the county. If the status in regard to paving was unchanged by the transaction and the duty still rested upon the municipality, and the county was undertaking to act merely as agent, then the county diverted the Federal funds from the purposes to which they were restricted by law, having obtained the funds under false colors and applied them to the exclusive use of the municipality, which had no right to obtain them.

The decision in *Lee County* v. *Smithville*, 154 *Ga.* 550 (115 S. E. 107), dealt with the right of the State Highway Commission, in conjunction with the county authorities, to lay out and construct a State-aid road through a municipality, so that such highway might be continuous. In the opinion (at p. 560) it was said: "The truth is, that the streets of the towns and cities belong to the State as do the county public roads. The legislature has given to the municipalities temporary control over the streets within their borders, which it can wholly withdraw or modify at will. So we reach the conclusion, that the State Highway Department, co-operating with the county commissioners of Lee County, can build this public road through the town of Smithville without its consent and against its will." If the effect of the transaction between the county and the City of Washington is to make the portion of the city street in question a part of a State-aid highway, then it must follow that the jurisdiction over the street and responsibility for its upkeep is taken from the municipality and placed upon the State Highway Commission; so that the conclusion is inescapable that the City of Washington was not bound by any enforceable contract for the paving of the street, no matter which view is taken. In either case the transaction, as a matter of law, should not be upheld. For all of these reasons the writer can not concur in the conclusions reached by the majority in the first headnote and first division of the opinion. The conclusion should have been directly to the contrary. The municipality was not bound by any legal and enforceable contract, and for that reason could not enforce assessments against the property owners. This conclusion should control the case and render unnecessary the consideration of any other issue. The writer is of the opinion that the city created a debt, as contended for by the plaintiffs in error, falling within the provisions of art. 7, section 7, par. 7, of the constitution (Civil Code of

1910, § 6563) ; but it is unnecessary, in this dissent, to deal with that question, for the reasons stated above.