PATTERSON *v.* STATE HIGHWAY DEPARTMENT *et al.; et vice versa.*

Nos. 15684, 15702. January 7, 1947. Rehearing denied February 7, 1947.

862

*J. Ralph Rosser* and *James Maddox,* for plaintiff.

*Eugene Cook, Attorney-General, S. W. Fariss, L. C. Groves,* and *R. Beverly Irwin, Assistant Attorneys-General,* for defendant.

WYATT, Justice. ■ The first question raised by the plaintiff in error is, did the State Highway Department have the right to condemn the property in question? The trial judge, under the evidence, was authorized to find that the proposed highway had been designated as a State-aid road, and that the Mayor Pro Tem of the City of LaFayette, who was acting mayor on account of the illness of the mayor, had been notified of the exact location of the proposed highway through the City of LaFayette.

In *Lee County* v. *Smithville,* 154 *Ga.* 550 (115 S. E. 107), this court was dealing with the right of the State Highway Department, in conjunction with the county authorities, to condemn property located in a municipality for the purpose of constructing a State-aid road under the provisions of the act of 1919 (Ga. L. 1919, p. 242 et seq.). In that case it appeared that "the construction of said road is upon the private property of parties owning land in Smithville, and is not upon any of the streets of said town, except in crossing one street;" and that "the county did not ask the mayor

and council of Smithville for leave to build said road upon private property therein, because it did not propose to interfere with any of the streets, roads, or highways of said town, under its jurisdiction." This court in that case said: "The truth is, that the streets of the towns and cities belong to the State as do the county public roads. The legislature has given to the municipalities temporary control over the streets within their borders, which it can wholly withdraw or modify at will. So we reach the conclusion, that the State Highway Department, co-operating with the county commissioners of Lee County, can build this public road through the town of Smithville without its consent and against its will."

It follows that the right of the State Highway Department, under the terms of the act of 1919, supra, to condemn the property in question for State-aid road purposes is clear. See *Appleby* v. *Holder*, 166 *Ga.* 512 (143 S. E. 596) ; *Jackson* v. *State Highway Department*, 164 *Ga.* 434 (138 S. E. 847).

The contention is made that the rule laid down in *Lee County* v. *Smithville*, supra, is not now applicable because of the provisions of the act of 1937 (Ga. L. 1937, p. 1081). The portion of this act relied upon reads as follows: "The State Highway Board shall determine and designate which of said streets, or parts thereof, shall constitute a part of the State-aid system of roads in this State for the purposes of construction and maintenance of the same; and, immediately upon such determination and designation, such board shall notify the mayor, or other like chief executive, of each municipality of the total amount of the mileage of streets within such municipality so designated as a part of the State-aid system and what streets, or parts thereof, were so designated, and annually thereafter by the first day of January such information shall be likewise furnished." It is contended that—since the quoted portion of the 1937 act makes provision for the designation of streets in a municipality as a part of the State-aid road system, and for notice to the city authorities of the total mileage of streets so designated—there is no authority of law for the designation of a State-aid road through a city except along existing streets, and for that reason property that is not now adjacent to any street can not be condemned for the construction of a State-aid road. It is contended that a new road, as a part of a State-aid road, can not be laid out or condemned within the limits of a municipality. We

can not agree with this construction of the 1937 act. We think that the purpose of the provision of that act, above quoted, was to give to the city authorities notice of what streets it was proposed to take over as a part of the State-aid road system. We do not think that it purports to deal with a situation where the State-aid road or a part thereof within the limits of a municipality is located on private property and is not owned or controlled in any manner by the municipality. Neither do we think that the act of 1937 was intended to limit the general power of the Highway Department to condemn private property for State-aid road purposes.

■ The plaintiff in error contends that the appointment of an assessor by the ordinary to represent her was not a legal appointment, for the reason that the law requires the ordinary to perform this duty upon notice from the condemnor in cases where the condemnee fails or refuses to appoint an assessor, and in this case the appointment was made by the ordinary upon order of the judge of the superior court. In making this contention, the plaintiff in error relies upon the provisions of the Code, § 36-401, which provides, in part, that the ordinary, upon notification by the condemnor that the condemnee has failed to name an assessor, shall name an assessor for the condemnee; and if the ordinary is disqualified, the clerk of the superior court shall make the selection.

The condemnation proceeding in this case, as alleged in the plaintiff's petition for injunction, was brought under the act of 1914. Code, § 36-1104 et seq. By this act (§ 36-1109), it is provided: "On the day named in the rule, or at any other time to which the hearing may be continued, the court, having first passed on and adjudged all questions touching service and notice, shall, after hearing from all persons responding and desiring to be heard, *make such order as to the appointment of assessors* as shall conform most nearly to the provisions of Chapters 36-2 to 36-6 and give all persons interested equal rights in the selection thereof." It is further provided (Code, § 36-1112): "All questions of law arising upon the pleadings or in any other way arising from the cause may be passed on by the presiding judge, who may, from time to time, in term or vacation, make such orders and give such directions as are necessary to speed the cause, and as may be consistent with justice and due process of law."

The orders passed by the judge of the superior court, directing

the ordinary to name an assessor for the condemnee, who had failed to appear and name an assessor, were a substantial compliance with the provisions of the condemnation statutes under which the condemnor was proceeding; and the selection of an assessor for the condemnee, in the manner shown by the pleadings and the evidence, was not invalid for any reason assigned.

■ It is contended by the plaintiff in error that the ordinary was disqualified to appoint an assessor for the reason that he is a first cousin of the plaintiff in error. Since this fact is presumed to enure to her benefit, she is in no position to complain. See *Wright* v. *Smith,* 104 *Ga.* 174 (30 S. E. 651) ; *Sikes* v. *State,* 105 *Ga.* 592 (31 S. E. 567).

■ The final contention of the plaintiff in error is that the award of the assessors is void for the reason that she was not notified of the time and place of the hearing before the assessors.

The Code, § 36-501, reads as follows: "If by reason of delay in appointing assessors, or other cause, the hearing can not be had at the time fixed in the original notice, the assessors shall fix the time for the hearing and notify both parties in writing of the time and place of the hearing."

It appears from the record that the plaintiff in error did not appear at the time and place named in the rule nisi, issued at the time the condemnation proceedings were filed. One of her attorneys of record in this case was present. It further appears that "when he [her attorney] was asked if Addie Patterson would name an assessor, or if he would name one for her as her attorney, he . . answered that Addie Patterson would not name an assessor, and that he would not name one for her, that he was present to 'watch the proceedings.'" Two of the assessors testified "that they understood from this statement by the landowner's lawyer that she would take no part in the proceedings, or the assessment of the damage; but following this they and the other assessors made every reasonable effort to get in contact with the landowner so as to advise her of the hearing, postponed the hearing until the 28th day of September, 1946, in order to give her additional time to be present at the hearing if she desired. . . Affiants made several unsuccessful efforts to communicate with Addie Patterson, the landowner, so as to advise her of the hearing at which the damages would be assessed. They called at the office where she worked, and they called her home, but were unable to get any response. They

postponed the hearing until the following day, when they again undertook to contact her, the said Addie Patterson, but failed. Affiants, together with N. A. Scott, the third assessor, went to the home of the landowner and proceeded to go over the right-of-way sought to be condemned, which is a very short distance and in plain view of the home of the landowner, and there proceeded to assess the damage."

The trial judge was authorized to find from the evidence that the plaintiff in error purposely avoided the efforts of the assessors to notify her of the date and time of the hearing. Under the facts in this case, we do not think that the award should be declared void for failure to give the notice required in the Code, § 36-501, supra.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur, except Duckworth, P. J., who dissents.*

DUCKWORTH, Presiding Justice, dissenting. It is my opinion that the statutory requirement of notice to the owner of the hearing by the assessors is mandatory and essential to a valid assessment, and that absence of such notice here renders the judgment invalid.